Argued October 25, demurrer sustained and peremptory writ issued
November 29, writ of mandamus issued December 21, 1949

# STATE ex rel. WILLAMETTE NATIONAL LUMBER CO. *v.* CIRCUIT COURT FOR MULTNOMAH COUNTY

211 P. (2d) 994

*Frank E. Nash,* of Portland, argued the cause for relator. With him on the brief were King, Wood, Miller and Anderson, of Portland.

*James T. Landye,* of Portland, argued the cause for respondents. On the brief were Green, Landye & Richardson, of Portland.

Before LUSK, Chief Justice, and BRAND, BAILEY, HAY and PAGE, Justices.

**HAY, J.**

This is an original proceeding in mandamus, brought by the relator, Willamette National Lumber Company, an Oregon corporation, against the Circuit Court of the State of Oregon for Multnomah County and Alfred P. Dobson, one of the judges of that court. The proceeding arose out of the following facts, as disclosed by the record before us:

One Marcus Jones, claiming to have received personal injuries while working for relator at its sawmill in Linn County, Oregon, commenced an action in tort against relator, in Multnomah County, Oregon, to recover damages in respect of such injuries. Service of summons in the action was made upon relator in Multnomah County. Relator moved to quash the service, upon the ground that its principal office and place of business was in Linn County, Oregon, and nowhere

else, and that the cause of action, if any, arose in Linn County. The motion was supported by the affidavit of William Swindells, relator's vice-president, amplified by his testimony taken before the respondent Judge Dobson. On the hearing of the motion, relator contended that the proper venue of the action was Linn County, and not Multnomah County. The motion to quash was denied, and relator thereupon instituted this proceeding, seeking a writ of mandamus commanding the respondents to set aside the order denying the motion to quash, and, in lieu thereof, to enter an order quashing such service. An alternative writ issued, and in due course the respondents made their return and answer thereto, denying generally (with certain formal admissions) the allegations of the alternative writ, with a further and separate return and answer, which incorporated as a part thereof the testimony of Mr. Swindells, taken before Judge Dobson as above mentioned. The further and separate return, as amplified by the testimony, disclosed the following:

Relator, Willamette National Lumber Company, and Willamette Valley Lumber Co. are separate corporations having separate logging and sawmill operations, but having common management, the cost of which is apportioned between them. Relator owns and operates a sawmill at Foster, in Linn County, and conducts logging operations in Linn County and a sales office in Polk County. A division of relator, doing business as Corvallis Lumber Co., operates a sawmill at Corvallis, in Benton County. Willamette Valley Lumber Co. owns and operates a sawmill and conducts logging operations in Polk County. Each of the sawmills is operated by a plant manager, who has an office at the mill. A general manager, Mr. Lewis, supervises

and controls the operations of all the sawmills. He lives at Salem, in Marion County, and has his office at Dallas, in Polk County. He also has office space in the offices at Foster and Corvallis. The logging operations of both corporations are under the supervision of a logging manager, who has his office at Corvallis.

In Portland, Willamette Valley Lumber Co. and relator maintain a joint office at 326 Pacific Building. On the office door are the names: Willamette Valley Lumber Company, Willamette National Lumber Company, Corvallis Lumber Co., George T. Gerlinger, Louis Gerlinger, Jr., and Wm. Swindells. George T. Gerlinger was vice-president of relator (he died October 9, 1948), and William Swindells is executive vice-president of relator and of Willamette Valley Lumber Co. The office staff consists of an auditor for both companies, a secretary, a bookkeeper and an assistant bookkeeper. These employees are paid by Willamette Valley Lumber Co. which is reimbursed in part by relator. The primary functions of the Portland office are to handle the financing of the operations of Willamette Valley Lumber Co. and of relator, and the purchase and sale of timber and timber lands. Mr. Swindells is the officer who handles the sale and purchase of timber and timber lands, but only about five per cent of such transactions involve relator. The auditor supervises the accounts and accounting of the offices of Willamette Valley Lumber Co. at Dallas, and of relator at Foster and Corvallis. Summary records are sent from these offices to Portland, and balance sheets and profit and loss statements are made up in Portland. Relator's banking is done with The First National Bank of Portland (Oregon). Its general

account is kept in the main branch of that bank in Portland, and its payroll account in the branch at Lebanon, in Linn County. The Portland office of relator is maintained as a matter of convenience, because financing is done in Portland and the main offices of the timber-controlling firms are in Portland. If no Portland office were maintained, it would still be necessary that financial transactions and timber transactions should be conducted and closed in Portland. The directors of relator all live in Portland and for that reason hold their meetings there. The stockholders' meetings are held in Portland. The corporate books, including the stock book and the minute books of both directors' and stockholders' meetings are kept at the Portland office. The plant offices at Foster, in Linn County, Corvallis, in Benton County, and Dallas, in Polk County, all report to and are controlled by the executive officer in Portland. All decisions concerning the general policy of relator are made from the Portland office, and no officer, official or employee of relator exercises any direction, control or supervision over relator's operations outside Linn County from any location within Linn County. Mr. Swindells is the only executive officer of relator functioning in Portland. Relator has no investment in Multnomah County other than the office furniture and equipment in relator's office. Approximately three months after the commencement of the Jones action, the mechanical process of making payroll checks was moved from Foster to Portland because more efficient bookkeeping machines for that work were available in Portland than at Foster.

To such return, the relator demurred on the grounds that the matter alleged therein and in the further and

separate return and answer does not constitute a defense, nor show sufficient or any cause for not obeying the alternative writ.

■■ It is suggested by the respondents that mandamus is not an appropriate remedy in this case. The relator concedes that the exercise of judicial discretion cannot be reviewed by mandamus; that mandamus is an extraordinary remedy and that its use is discretionary with this court; and that mandamus is justified only where the relator has no other plain, speedy and adequate remedy in the ordinary course of the law.

■ The demurrer had the effect of admitting the truth of the material recitals of the return to the alternative writ. If such recitals showed that the denial of relator's motion to quash was the exercise of a judicial discretion in the premises, then, of course, mandamus will not lie to review such discretion. On the other hand, if such recitals show that the relator had a right to insist upon its statutory privilege to be sued either in the county in which it has its principal office or place of business or in that wherein the cause of action arose, then it would seem that it was the plain duty of the respondent judge to quash the service of summons, and no exercise of judicial discretion was involved.

This court has held that mandamus is a proper remedy in a case of this sort. *State ex rel. v. Latourette,* 168 Or. 584, 125 P. 2d 750; *State ex rel. v. Kanzler,* 129 Or. 85, 276 P. 273; *State ex rel. v. Dobson,* 171 Or. 492, 135 P. 2d 794, 137 P. 2d 825; *State ex rel. v. Updegraff,* 172 Or. 246, 141 P. 2d 251.

Respondents, in arguing to the contrary, place their chief reliance upon chapter 438, Or. L., 1949, which

added a new section to Oregon Compiled Laws Annotated, to be numbered 10-607a, and to read as follows:

"If a motion or other form of application on special appearance be interposed and denied, the objection thereby taken shall not be waived by the subsequent entering of a general appearance; and the court's ruling thereon shall be subject to review on appeal from the final judgment, decree or other determinative appealable order in the cause or matter."

■ The complaint in the Jones action was filed December 28, 1948, and summons was served upon relator on December 30, 1948. On January 7, 1949, relator appeared specially and moved to quash service of summons. On June 2, 1949, the court denied such motion. A general appearance by relator thereafter would have been a waiver of its statutory immunity from being sued in a county other than that in which it has its principal office or place of business. *State ex rel. Crawford v. Almeda C. M. Co.*, 107 Or. 18, 22, 212 P. 789; *Mutzig v. Hope*, 176 Or. 368, 385, 158 P. 2d 110; 56 Am. Jur., Venue, sections 38, 40. Section 10-607a, O. C. L. A., was not available to have relieved relator from the effects of such waiver, as that section did not become law until July 16, 1949. As the point is not before us, we do not determine whether or not, if section 10-607a had been in effect, it would have precluded relator from seeking a remedy by mandamus.

■ An appearance for the sole purpose of quashing the service of a summons is a special and not a general appearance. *Whittier v. Woods*, 57 Or. 432, 435, 112 P. 408; *Multnomah Lumber Co. v. Weston Basket Co.*, 54 Or. 22, 26, 99 P. 1046, 102 P. 1; *State ex rel. v. Crawford*, 159 Or. 377, 394, 80 P. 2d 873; 3 Am. Jur., Appearances, section 19, text and note 12. The weight

of authority holds that statutes relating to venue are "procedural merely, and not jurisdictional in the strict sense." *Mutzig v. Hope,* supra (176 Or. 368, 385, 158 P. 2d 110). Nevertheless, relator had a right to stand upon its statutory immunity in the premises, and its resort to mandamus upon the denial of its motion to quash was proper.

Under the law of Oregon, the incorporators of a domestic corporation are required to adopt written articles of incorporation. These articles must specify the place where the corporation proposes to have its principal office or place of business. Section 77-210, O. C. L. A. The articles must be subscribed in triplicate, one of which must be filed with the corporation commissioner and another recorded in the office of the county clerk of the county in which the enterprise, business, pursuit or occupation of the corporation is proposed to be carried on, or in which its principal office or place of business is proposed to be located. Section 77-204, O. C. L. A., as amended by chapter 401, Or. L., 1941. Upon the filing of such articles with the corporation commissioner, the commissioner issues to the incorporators a certificate under his official seal, showing, among other things, the location of the corporation's principal office. Section 77-205, O. C. L. A., as amended by chapter 301, Or. L. 1945. The principal office or place of business may be changed by the directors upon a three-fourths vote of all the stock subscribed and the filing of supplementary articles of incorporation, showing such change. Section 77-211, O. C. L. A., as amended by chapter 183, Or. L., 1949.

The venue of transitory actions in Oregon is fixed by statute as follows:

" * * * the action shall be commenced and tried in the county in which the defendants, or either of

them, reside or may be found at the commencement of the action; provided, that in any action founded on an alleged tort, the same may be commenced either in the county where the cause of action arose or in the county where the defendants, or one of them, resides or may be found at the commencement of the action;  *  *  *." Section 1-430, O. C. L. A.

Service of summons is effected by delivery of duly certified copies of the summons and complaint, as follows:

"(1) If the action be against a private corporation, to the president or other head of the corporation, vice president, secretary, cashier, assistant cashier or managing agent, or, in case none of the officers of the corporation above named shall reside or have an office in the county where the cause of action arose, then to any clerk or agent of such corporation who may reside or be found in the county, or, if no such officer be found, then by leaving a copy thereof at the residence or usual place of abode of such clerk or agent." Section 1-605 (1), O. C. L. A.

■ Construing together sections 1-403 and 1-605, O. C. L. A., this court has held that the venue of transitory actions against domestic corporations may be laid in one of two counties only, that is to say, either the county in which the cause of action arose or that in which the corporation maintains its principal place of business. *Mutzig v. Hope,* supra (176 Or. 368, 387, 388, 158 P. 2d 110); *State ex rel. v. Updegraff,* supra (172 Or. 246, 252, 141 P. 2d 251); *Davies v. Oregon Placer & Power Co.,* 61 Or. 594, 597, 123 P. 906; *Winter v. Union Packing Co.,* 51 Or. 97, 98, 93 P. 930; *Holgate v. O. P. R. R. Co.,* 16 Or. 123, 125, 126, 17 P. 859.

■ It is suggested by the relator that Oregon has

"clearly rejected the doctrine that a corporation may reside or have its principal place of business in more than one county". *State ex rel. v. Updegraff,* supra, is cited in support of this suggestion. Whether or not that decision so holds, it would seem to be illogical to say that a corporation could have more than one principal place of business, using the adjective in the sense of "chief" or "main" (Webster) which we suppose was the sense in which it was used by the legislature. The question of which of two or more places where a corporation actually transacts business is its principal place of business does not appear to have arisen heretofore in any of the Oregon decisions.

The statutes in other jurisdictions respecting the venue of transitory actions against corporations differ considerably from ours, and, for that reason, the decisions of the courts in such other jurisdictions do not aid us greatly in our present inquiry. Under some of such statutes, a corporation may be sued not only where the cause of action arose or where the corporation is a resident, but also in any county where it exercises its corporate powers or privileges, or transacts a substantial part of its business, or maintains an agent, or where it has an office, agent or place of business, or where its chief officer resides, or where it owns property and transacts business. 19 C. J. S., Corporations, section 1296, p. 977; *Miller v. Boyle Const. Co.,* 198 S. C. 166, 17 S. E. 2d 312; *Western Travelers' Accident Association v. Taylor,* 62 Neb. 783, 87 N. W. 950. The situation involved in many of the reported cases was that of a transitory action brought against a domestic corporation in the county designated in its articles as its principal place of business, although in fact it maintained no office or place of business, in

such county. In such cases, it is generally held that the designation is conclusive against the corporation, but not in its favor. *Higgins v. Hampshire Products, Inc.,* 319 Mich. 674, 30 N. W. 2d 390, 175 A. L. R. 1083, 1088; *State ex rel. Northwestern Land and Colonization Co. v. District Court,* 191 Iowa 244, 247, 182 N. W., 211; *Hawk & Buck Co., Inc. v. Cassidy* (Tex. Civ. App.) 164 S. W. 2d 245, 246; *Milwaukee Steamship Co. v. City of Milwaukee,* 83 Wis. 590, 53 N. W. 839, 841, 18 L. R. A. 353.

■ A corporation is a legal entity, separate and distinct from the persons who comprise its stockholders, directors or officers. *United States Fidelity & Guaranty Co. v. Lawrence,* 184 Ga. 83, 190 S. E. 346, 348; *Sneed v. Santiam River Timber Co.,* 122 Or. 652, 655, 260 P. 237; 1 Thompson on Corporations, 3d ed., section 9. The place of residence of the corporation is not determined by the residence or domicil of the stockholders, directors, or officers, or by the place where they hold their meetings. 18 C. J. S., Corporations, section 176, p. 584.

■ Where the legislature requires that a corporation shall designate, in its articles, the place in which its principal office or place of business is to be located, it is held that the legislative purposes in such requirement are to fix the residence of the corporation for venue purposes, to facilitate service of process, to establish the corporate situs for purposes of taxation, and to apprise stockholders where they may go to inspect the books and records of the corporation. Fletcher Cyc. Corporations, Perm. Ed., sections 140 and 4046; 18 C. J. S., Corporations, section 177, p. 586; *Higgins v. Hampshire Products, Inc.,* supra (319 Mich. 674, 30 N. W. 2d 390, 175 A. L. R. 1083, 1086); *State*

*ex rel. Juvenile Shoe Corp. v. Miller,* 217 Mo. App. 16, 272 S. W. 1066, 1067; *Hawk & Buck Co., Inc. v. Cassidy,* supra (Tex. Civ. App.—164 S. W. 2d 245, 246).

It is contended that, as a general rule, the residence or principal place of business of a corporation for venue purposes is held to be that which is fixed by its articles of incorporation. The following cases are cited in this connection: *Kibler v. Transcontinental & Western Air, Inc.,* D. C. N. Y., 63 F. Supp. 724, 726; *In re Hillmark Associates, Inc.,* D. C. N. Y., 47 F. Supp. 605, 606; *Keehn v. S. & D. Motor Lines, Inc.,* 41 N. Y. S. 2d 521, 524; *State v. Atlantic Ice & Coal Co.,* 180 Ga. 285, 178 S. E. 743; *Woods Gold Mining Co. v. Royston,* 46 Colo. 191, 103 P. 291, 292. We do not find, however, that the authorities cited support any such rule in cases where the corporation does not in fact maintain its principal place of business at the place designated in its articles. In the Hillmark Associates case, the Woods Gold Mining Co. case and Atlantic Ice & Coal Co. case, each of the corporate defendants maintained places of business in more than one county or district, one of which places was that designated in its papers as its principal place of business, and, under those circumstances, the courts held or assumed that the corporation had a residence in such designated county or district. In the Kibler case, the business of the defendant was the transportation of freight and passengers by air on regular schedules and along prescribed routes, and the court applied to it the same rule as to venue as is applicable, in some jurisdictions, to suits against railroad companies, that is, that a railroad is a resident of every county through which its line passes. 56 Am. Jur., Venue, section 29, pp. 32, 33.

The argument is advanced that the residence of a

corporation is nothing more than a legal concept for
venue purposes, and that the corporation can be
"found" by a process-server only at the place desig-
nated in its articles of incorporation, unless special
statutes provide otherwise. While, in an abstract sense,
this may be true, nevertheless, for practical purposes
and in accordance with the modern view, a corporation
may be said to have a local habitation or residence.
Anno., 175 A. L. R. 1093.

The respondents make the point that, unless the
statute so provides, the location of the principal office
or principal place of business of the corporation is not
conclusively determined by the articles, but is a ques-
tion of fact as to third persons. In this connection,
they call attention to the fact that, by section 77-213,
O. C. L. A., the articles are made prima facie evidence
only of the existence of the corporation and of its
right to transact the business mentioned therein, but
not of the place where the corporation proposes to
have its principal office or place of business. As to
the latter fact, respondents contend that the question
is always one of fact. In support of this contention,
they rely upon a number of authorities, which we shall
now discuss.

In 8 Fletcher, Cyc. Corporations, Perm. Ed., sec-
tion 4046, p. 508, it is stated that, according to the
weight of authority, the recital in the articles of in-
corporation of the location of the principal office or
place of business is not conclusive. In support of the
text, the author cites 27 Mich. L. Rev. 578, 16 Va.
L. Rev. 846, and *State ex rel. Howard Cole & Co., Inc.
v. Circuit Court,* 178 Wis. 89, 189 N. W. 259.

The article in the Michigan Law Review asserts
that an ex parte declaration by a corporation in its

certificate, while desirable for many reasons, ought not to prevent the state, in its taxing authority, from acting on the true situation. It criticizes the decision in the case of *Stanton v. Tax Comm.* (Ct. of App. Ohio, 1927) 159 N. E. 340, aff. *Stanton v. Zangerle,* 159 N. E. 823, under which a corporation was held to be entitled to have its intangible personal property listed for taxation on the tax-roll of the county in which the place was located which was designated in its articles as "the place where it is to be located or its principal business transacted." It comments that, in New York and Ohio, the courts rule that, where the statute requires the articles to state where the principal office is to be located, such statement is conclusive, even against the states in matters of taxation. It concedes, however, that the numerical weight of authority is to the contrary, and says that:

> "An *ex parte* declaration by a corporation in its certificate, while desirable for many reasons ought not to prevent the state in its taxing authority from acting on the true situation. * * * "

The Virginia Law Review article is based upon the decision in *Sweeny v. Keystone Driller Co.,* 122 Oh. St. 16, 170 N. E. 436, which held that, in respect of the recordation of chattel mortgages, the place of residence of a corporation, as designated in its articles, is conclusive as against the corporation.

In *State ex rel. Howard Cole & Co., Inc. v. Circuit Court,* supra, the defendant, a domestic corporation, had moved for a change of venue to the county designated in its articles as its place of business. The evidence showed that it had no office, officer, director, agent or place of business in that county, and the court

held that, under those circumstances, it was not entitled to a change of venue.

9 Fletcher, Cyc. Corporations, Perm. Ed., section 4373, p. 163, states merely: "There are decisions * * * apparently holding that the principal office or place of business is a question of fact, regardless of the designation in the incorporation papers." But the same section recites: "Generally, the location of the principal office or place of business, i.e., its residence, for venue purposes, is according to the designation thereof in the incorporation papers, regardless of whether in fact it transacts business or has any office or agent there for the transaction of business, or of the fact that its principal office or place of business is elsewhere."

The text of 18 C. J. S., Corporations, section 176, p. 585, is succinctly but accurately summarized in the black-letter head-note as follows:

"Where a corporation's principal place of business or domicile is fixed by its charter, the charter is the best evidence of its domicile and, according to some authorities, although not others, conclusive evidence thereof. A corporation is not conclusively presumed a resident of the place where it sues."

In 4 Thompson, Corporations, 3d ed., section 3019, p. 784, it is stated:

" * * * The location of the place of business or the principal office of a corporation, for the purpose of jurisdiction, may be a question of fact, and one on which the recitals in the articles of association are not conclusive. The principal place of business, is usually held to be the place where its executive officers meet to transact the governing business of the corporation proper and where its books are kept. * * * "

This text is qualified, on page 785, by the following:

" * * * In other words a corporation is properly suable only in the county of its incorporation, unless the statutes allow suit to be brought in jurisdictions in which the corporation conducts business or maintains an agency and, where this exceptional method is allowed, the party invoking the jurisdiction must show clearly that he comes within the exception. * *. * "

*In re Guanacevi Tunnel Co.,* (C. C. A. 2d) 201 F. 316, *In re American & British Mfg. Corp.,* (D. C., Conn.) 300 F. 839, and *In re Wenatchee-Stratford Orchard Co.,* (D.C., Wash.) 205 F. 964, are all federal bankruptcy cases. Under section 2 of the Bankruptcy Act (11 U. S. C. A., section 11) jurisdiction is vested in the district courts of the United States "to adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof, * * *." It is generally held that, in proceedings under the Bankruptcy Act, a statement in the charter of the corporation of the location of its principal place of business is not conclusive, the real question being where its principal place of business was in point of fact during the period fixed by the act. The decision in *In re American & British Mfg. Corp.,* supra, embodies an interesting discussion of the question, which is one of jurisdiction rather than of venue, and it is apparent therefrom that the bankruptcy cases are not in point upon the question involved in the case at bar.

In *Gorman v. A. B. Leach & Co., Inc.,* (D. C., N. Y.) 11 F. 2d 454, and *Higgins v. Hampshire Products, Inc.,* supra (319 Mich. 674, 30 N. W. 2d 390, 175 A. L. R. 1083) the designation of the corporation's principal

place of business in its articles was held to be conclusive on venue as against the corporation, notwithstanding the fact that it actually did no business at that place.

The following cases, having to do with the situs of the intangible personal property of corporations for tax purposes, are cited by respondents: *Home Fire Ins. Co. v. Benton,* 106 Ark. 552, 153 S. W. 830; *State ex rel. Howard Cole & Co., Inc. v. Circuit Court,* supra (178 Wis. 89, 189 N. W. 259); *Inter-Southern Life Ins. Co. v. Milliken,* 149 Ky. 516, 149 S. W. 875; *Alabama Clay Products Co. v. City of Birmingham,* 226 Ala. 631, 148 So. 328; *Herdman Motor Co. v. State Board of Tax Appeals,* 119 N. J. L. 164, 194 A. 870. In all of them it was held that, where the designation of the principal place of business in the corporation's articles was fictitious, such designation would not bind the taxing authority.

We are of the opinion that, while the cases cited by the respondents in this connection are authoritative when applied to situations in which a corporate defendant does not maintain any office or place of business at the place designated as its principal place of business in its charter or articles of incorporation, they are not in point in the case at bar, in which the relator actually does maintain an office and place of business at the place designated in its articles as its principal place of business, although it has other offices and places of business in the state.

The respondents maintain, however, that the actual principal office and principal place of business of the relator at the time of the commencement of the Jones action and of the service of summons therein was at Portland, in Multnomah County. They urge that the

determinative factors in this connection are the following: (a) The place where the executive officers meet and transact the governing business of the corporation; (b) The place where the books of the corporation are kept; (c) The place where the principal banking business is done; and (d) The place from which the principal business correspondence is conducted. Their argument is that the facts alleged in the respondents' return, and admitted in effect by the relator's demurrer thereto, settle the question in favor of their contention.

In this connection, respondents again cite several federal bankruptcy cases, but, as we have endeavored to show, such cases are not in point. They cite also *Colorado Interstate Gas Co. v. Federal Power Commission* (C. C. A. 10th) 142 F. 2d 943. That case arose upon petitions to review orders of the Federal Power Commission requiring the petitioners to make reductions in their rates to consumers for supplies of natural gas transported in interstate commerce. Section 19 (b) of the Natural Gas Act (52 Stat. 821, 15 U. S. C. A., § 717 r (b)), provided that any party to a proceeding under the act who was aggrieved by an order of the Commission might obtain a review of the order in the Circuit Court of Appeals of any circuit in which the natural gas company to which the order related was located, or had its principal place of business, or in the Circuit Court of Appeals of the District of Columbia. Motions to dismiss the petitions were filed, based upon the grounds that it appeared from the face of the petitions that the petitioning companies were private corporations organized and existing under the laws of Delaware. The Delaware laws required that the certificate of incorporation should set forth the name of the county, and the city, town, or place

within the county in which the principal office or place of business of the corporation is located. Such laws required also that every corporation should maintain a principal office or place of business in the state. The certificates of incorporation of the corporations in question stated the location of their principal offices but were silent in respect of their places of business. It was held that the principal place of business of a corporation is where its actual business is conducted or transacted. "It is a question of fact to be determined in each particular case by taking into consideration such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." All the physical properties of one of the companies were located and its business operations were conducted within the tenth circuit. Another maintained offices in Denver (10th circuit) where its executive officers and agents supervised and administered its properties and operations. Another transported almost ninety per cent of its natural gas into the tenth circuit, and sold virtually all of it to another defendant company. The two companies last referred to were operated as a unit, having a single general manager and maintaining an office in Colorado Springs in charge of such manager, from which the supervision, direction, and management of both companies were conducted. There were approximately thirty-six employees in the office. The principal books of account were kept there. All major purchases for both companies were made there, and all bills for materials purchased were paid for by vouchers issued out of that office. The principal bank account of one of the companies was maintained at Colorado Springs (10th circuit). The court concluded

that the principal place of business of each company, within the meaning of the statute, was in the tenth circuit. The holding was undoubtedly correct upon the facts disclosed in the opinion. The question was one of jurisdiction. The companies' argument that they were incorporated in Delaware and that, therefore, that state was their legal residence and domicil was without force, as they did no business whatever in Delaware.

*Mullen v. Northern Accident Ins. Co.*, 26 S. D. 402, 128 N. W. 483, also cited by respondents, was an action brought against a domestic insurance company upon a policy of accident insurance. The law provided that transitory actions should be tried in the judicial subdivision in which the defendant resided. The defendant conducted an accident insurance business at Aberdeen, in Brown County. The action was instituted in Lawrence County. On appeal from denial of a motion to change the venue to Brown County, the court held that for venue purposes, unless otherwise provided by statute, a domestic corporation is a resident of the county where its principal place of business is located, and that by "principal place of business" was meant "the place where its president, secretary, and board of directors meet to transact the governing business of the corporation proper, where the books of the corporation are kept, that is, where the governing power of the corporation is exercised and controlled by the board of directors and officers," and not every place where the corporation may happen to transact business. It held further that the defendant corporation was a resident of Brown County, and that the motion to change the venue to that county should have been allowed. There was no suggestion that the corporation maintained a principal or any place of business any-

where except in Brown County, so the case is not of much help here.

Another case cited by respondents is *Partch v. Adams*, 55 Cal. App. 2d 1, 130 P. 2d 244. The question involved was, at what place shares of stock of a domestic corporation could be subjected to attachment. The articles designated Sacramento County as the corporation's principal place of business, but the evidence showed that all of its business was done in San Joaquin County, where most of its officers resided and where all of its corporate records were kept. Attachment of the stock was sought to be effected by service on a proper corporate officer in San Joaquin County. The court held that, as the corporation carried on none of its activities and had no officer present at the place designated in the articles as its principal place of business, the attachment in San Joaquin County was valid. It said, in part:

" * * * The fiction that a corporation has its legal domicile at the place designated in its articles was created to accomplish justice in certain cases, not to defeat justice. When a legal fiction results in an absurdity it should be disregarded. * * * "

Respondents seek to apply this comment to the situation in the case at bar, but we think it is not applicable. The cases are not parallel. In the case at bar, the corporation maintains an office and a manufacturing plant at Foster, in Linn County, the place designated in its articles as its principal office and place of business, whereas in the Partch case the defendant had no office or place of business in Sacramento County, which its articles named as its principal place of business. The designation of Sacramento County, in the Partch case, was clearly a fictitious one, but the evi-

dence in the instant case does not indicate that the Linn County designation was other than genuine and bona fide.

◼ While we recognize the fact that sometimes there may be a real distinction between a corporation's principal office and its principal place of business, we think that, in the statutes under consideration, our legislature regarded the two terms as being synonymous. For example, section 77-210, O.C.L.A., refers to the place—not "places"—where the corporation proposes to have its principal office or place of business; section 77-204, O. C. L. A., as amended by chapter 401, Or. L. 1941, requires the articles to be recorded in the county—not "county or counties"—where the principal office or place of business is proposed to be located; section 77-205, O. C. L. A., as amended by chapter 301, Or. L. 1945, requires the corporation commissioner to issue an official certificate showing, inter alia, the location of the corporation's principal office, but makes no mention of its principal place of business; and section 77-211, O. C. L. A., as amended by chapter 183, Or. L. 1949, which provides for the adoption of supplementary articles for the purpose, among others, of changing the corporation's principal office or place of business, and requires that one original of such supplementary articles be filed with the county clerk "in the county where the corporation has its principal office", says nothing about the county where it has its principal place of business. The relator's articles, it may be noted, recite: "The principal office and place of business of the Corporation and its registered office shall be in the town of Foster, Linn County, State of Oregon."

◼ The manufacture and sale of lumber is evi-

dently the principal business of the corporation, and that business is conducted at Foster, in Linn County, where the corporation has its sawmill and an office, under the supervision of a plant manager. Its financing, and its internal affairs, are subsidiary to its principal business. There is no legal reason why the corporation may not, for its own convenience, maintain an office in Multnomah County. It may be that it is improper for it to keep its corporate records in that office, but the mere fact that it does so does not make that office its principal office or place of business. It would seem that the only lawful manner in which relator corporation may change its principal office or place of business is by adopting and filing supplemental articles of incorporation for that purpose. Section 77-211, O. C. L. A., as amended by chapter 183, Or. L. 1949. Until it does so, its residence, as established in good faith by its articles, remains at Foster, in Linn County, at least as long as it actually maintains an office and a place of business at that place. *Holgate v. O. P. R. R. Co.,* supra (16 Or. 123, 125, 17 P. 859); *Hildebrand v. United Artisans,* 46 Or. 134, 79 P. 347; *Davies v. Oregon Placer & Power Co.,* supra (61 Or. 594, 597, 123 P. 906); *United States Fidelity and Guaranty Company v. Lawrence,* 184 Ga. 83, 85, 190 S. E. 346; *Dairymen's League Co-op. Assn., Inc. v. Brundo,* 131 Misc. 548, 227 N. Y. S. 203, 205; *Rossie Iron-Works v. Westbrook,* 59 Hun. 345, 13 N. Y. S. 141; *State ex rel. v. District Court,* 191 Iowa 244, 182 N. W. 211. Cf., generally, cases cited in annotation, 175 A. L. R. 1092.

No legal rights of the plaintiff in the Jones case will be affected adversely by this holding. Mr. Jones may still bring his action, laying the venue thereof in Linn County, and may serve the corporation, through

one of its principal officers, in that county, in Multnomah County, or anywhere else in the state. *State ex rel. v. Updegraff,* supra (172 Or. 246, 253, 141 P. 2d 251). Justice, we should assume, will be accomplished equally by action in Linn County as by action in Multnomah County.

The demurrer to the return to the alternative writ of mandamus will be sustained, and a peremptory writ will issue in due course.