Argued September 12, affirmed as modified October 4, 1967

CREDITORS PROTECTIVE ASSOCIATION,
*Respondent, v.* BALCOM ET AL, *Appellants.*

432 P. 2d 319

*Robert J. Morgan,* Milwaukie, argued the cause for appellants. With him on the brief were Erlandson, Morgan & McClain, Milwaukie.

*Seymour L. Coblens,* Portland, argued the cause for

respondent. With him on the brief were Reinhardt, Coblens, Stoll & Winkel, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is a creditor's bill brought against judgment debtors, Balcom, their corporate employer, Silver Shed Logging Co., and their daughter, Shirley Roberts, who is the principal shareholder and an officer and director of the corporate employer. Defendants appeal from the decree granting equitable relief to the plaintiff.

Defendants' first assignment of error attacks the propriety of the trial court's overruling of defendants' demurrer. In support of their demurrer, defendants argue that the complaint shows on its face that plaintiff's remedies at law for collection of its judgment are adequate.

This court has held that the judgment creditor's failure to fully pursue his legal remedies under garnishment and proceedings supplementary to execution does not preclude a creditor's bill. *Hall's Western Auto v. Brock,* 240 Or 85, 400 P2d 5 (1965); *Matlock v. Babb,* 31 Or 516, 49 P 873 (1897); *Sabin v. Anderson,* 31 Or 487, 49 P 870 (1897). Defendants concede this rule, but argue that the rule should be limited to situations where the debtor has transferred assets to third persons. This court does not feel that the creditor's bill remedy should be so narrowly circumscribed. In *Hall's Western Auto v. Brock,* supra, it was held that a judgment creditor may proceed alternatively at law or in equity to recover assets which

have been fraudulently transferred. Garnishment and attachment statutes do not afford an adequate remedy at law to uncover assets fraudulently concealed, because the creditor cannot both unmask the fraud and prevent the disposal of the property as he can by a creditor's bill in equity. *Sabin v. Anderson,* supra. The ground for equitable jurisdiction in such cases is fraud in the concealment or disposal of the debtor's property, which will defeat the collection of the debt unless equitable remedies are applied. While such cases classically involve fraudulent conveyances, the same considerations apply when assets are placed beyond the reach of creditors, either by fraudulent transfer or some other fraudulent scheme. The existence of fraud and the multiplicity of actions at law render the statutory remedies cumbersome and inadequate. The facts alleged by plaintiff specify its status as a judgment creditor; the return of executions unsatisfied; and each defendant's participation in a scheme to hinder, delay and defraud creditors. Under the facts alleged a creditor's bill will lie.

The defendants next contend that the trial court erroneously determined that the defendants participated in actions or practices which tended to hinder, delay and defraud the creditors of the defendants Balcom. This contention requires a de novo review of the evidence produced in the trial court. *Malick et ux v. Malick,* 208 Or 107, 298 P2d 841 (1956).

From 1959 until September of 1963, defendants Leo A. Balcom and Dorothy L. Balcom were engaged in a logging partnership. Their daughter, defendant Shirley Roberts, was employed by the partnership as a bookkeeper. The partnership suffered financial reverses and on September 3, 1964, plaintiff recovered a judgment in excess of $16,500 against the defend-

ants Balcom. At that time Balcoms were heavily indebted to other creditors as well. In September, 1963, defendants organized the Silver Shed Logging Co., and transferred all of the partnership assets to the corporation in exchange for the corporation's agreement to assume partnership liabilities. The corporation continued the logging business. The defendants Balcom each owned one percent of the corporate stock and were members of the board of directors. Leo Balcom became president and general manager. Defendant Dorothy Balcom became vice president and treasurer. Defendant Shirley Roberts was given 98 percent of the stock, was a member of the board, and became bookkeeper and secretary of the corporation.

Between April 27, 1965, and October 3, 1966, plaintiff served nine garnishments on Silver Shed. All of the garnishments were answered "none" except on one occasion the registered agent amplified the answer, "No wages due—defendants are still indebted to the company." Shirley Roberts furnished the information for the garnishment returns.

In July, 1964, Leo Balcom purported to borrow $1300 from the corporation on his unsecured note. At this time there was not sufficient money in the corporate bank account to pay Leo and Dorothy's wages. The corporation made little, if any, attempt to enforce the note. Defendant Leo Balcom purported to remain perpetually indebted to the corporation on this note. Substantial sums were paid to Leo Balcom in wages after the due date of the purported loan. Balcoms rented certain property to the corporation for $60 per month. Notwithstanding some initial crediting of the rent on Leo's note, Leo was paid substantially all of the rent rather than applying it to the note. Leo testified, in effect, that he would repay

the loan when he could afford to. The sums paid Leo for wages and rent after the due date of the note far exceeded the sum due on the note.

The Balcoms fixed and were paid a monthly wage from the corporation. Any one of the individual defendants, as officers of the corporation, was authorized to and did sign checks on the corporate bank account. It was a frequent practice for the Balcoms to be paid their wages in advance. Checks for these advance wages were signed either by Leo Balcom or Shirley Roberts. Shirley testified that the regular corporate pay day was the 10th of the month, "But every day can be an advance day." In December, 1965, Leo and Dorothy were paid bonuses from the corporation, even though their wage accounts were overdrawn. As a result of the payment of wages in advance, the corporation repeatedly contended that no wages were due to Balcoms when served with notices of garnishment.

The corporation paid premiums on certain of Leo's life insurance policies. Dorothy was the beneficiary. The corporation had no interest in these insurance policies. Leo testified that some of these premium payments were wage advances and some were, in effect, further loans.

The corporate records were inadequate. No balance sheet or profit and loss statements were ever prepared. The corporation filed no income tax returns. A Mercedes-Benz automobile was maintained in the corporate name, but used by Balcoms for personal use. Shirley Roberts and her husband borrowed substantial funds from the corporation. The corporation wrongfully used the PUC permits of the pre-existing logging partnership.

As bookkeeper, secretary, and 98-percent share-

holder in the corporation, Shirley Roberts knew intimately of these practices and took an active personal part in many of them.

Shortly after plaintiff filed an amended and supplemental complaint in this proceeding, seeking to subject Balcoms' shares in Silver Shed to plaintiff's judgment claim, Balcoms transferred these shares to Dorothy Balcom's parents, in violation of a restraining order in the original action against Balcoms.

■ The foregoing brief summary of the evidence compels the conclusion that the defendants Balcom sought to insulate their income, some of their personal, and all of their business assets, from creditors' claims, primarily by using the device of the family corporation; that each of the defendants participated fully in the scheme to hinder, delay and defraud Balcoms' creditors; and that this participation was engaged in knowingly and with the intent that plaintiff's claim would be rendered uncollectible or substantially delayed. The trial court correctly so found.

The case at bar is to be distinguished from the situation in *Coastal Adj. Bureau v. Hutchins,* 229 Or 418, 367 P2d 430, 93 ALR2d 992 (1961). In the case at bar, the employee, as manager, in making advance payments on wages, was dealing with himself, not at arm's length. The other means employed to totally insulate income demonstrate an integrated, collusive scheme to defraud.

The remaining assignments of error attack the scope of relief granted by the trial court. The decree, among other things, ordered that the plaintiff have judgment for and recover from the defendants Leo Balcom, Dorothy Balcom, Silver Shed Logging Co., and Shirley Roberts, and each of them, the sum of $4,276.66. This was the amount determined to have

been wrongfully withheld from the garnishment process. The propriety of this order is challenged on appeal.

Inasmuch as the judgments against Leo Balcom and Dorothy Balcom are cumulative of the original judgment, the only question is the propriety of the judgments against Silver Shed Logging Co., and Shirley Roberts. As set forth above, the evidence clearly supports the finding that Shirley Roberts actively participated with her parents in a scheme to hinder the Balcoms' creditors from reaching their income and assets. In *Sabin v. Anderson,* supra, this court held that a fraudulent grantee whose purpose and intent was to aid the debtor in a scheme to defraud his creditors, was personally liable to the creditors of the fraudulent grantor, not only for proceeds which he retained, but also for those which he had paid over to the fraudulent grantor.

██ While not in form a fraudulent conveyance, the purpose and effect of these transactions was similar, in that in each instance the debtors' property was placed beyond the reach of their creditors. Here the holder of the debtors' property, Shirley Roberts, in concert with the debtors, wrongfully paid over, or allowed to be paid over, amounts due to debtor in order to prevent the plaintiff from reaching the property. We hold that one who actively participates with the debtor in a fraudulent scheme to hinder the creditor's enforcement of his judgment, and, pursuant to that scheme, withholds amounts due on garnishment, is personally liable for the amount that garnishment would have realized. The fact Shirley Roberts received no pecuniary benefit from the transactions is not decisive. It is not essential to the liability of a person who commits fraud that he should have obtained any

benefit or advantage from the transaction. *Sorenson et ux v. Gardner et ux,* 215 Or 255, 334 P2d 471 (1959).

Under the facts of this case, having held Shirley Roberts liable, the trial court correctly found that Silver Shed Logging Co., was likewise liable. Abundant evidence shows that the corporation was a sham and that its incorporators and stockholders so regarded it. A court of equity will not allow the corporate form to be utilized as a vehicle for fraud. *Bennett v. Minott,* 28 Or 339, 39 P 997, 44 P 288 (1896).

With respect to that part of the decree which orders that the rents due and to become due on the Balcom property be paid to the plaintiff until the original judgment is fully satisfied, the decree must be modified. The decree enjoins defendants from using as offsets to any further garnishments served upon the corporation any alleged debts owed by the defendants, thus the rents will be available for garnishment when they become due. There is no occasion for a court of equity to afford greater relief.

Affirmed as modified.