# BRS, INC., *Appellant,*
### *v.*
# DICKERSON et al, *Respondents.*
## (TC 36-508, SC 24623)
### 563 P2d 723

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Richard H. Werschkul and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Harlan Bernstein, Portland, argued the cause for respondents. With him on the brief were Jack Ofelt, Jr., and Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

Before Denecke, Chief Justice, and Holman, Lent and Davis, Justices.

DAVIS, J., Pro Tempore.

**DAVIS, J., Pro Tempore.**

Plaintiff brings this action for damages alleging fraud and bad faith on the part of the defendants. Defendants Dickerson and Sebree moved to quash the service of summons and complaint, which motion was granted. Plaintiff appeals. Defendant Harkins was not served and is not a party defendant to this appeal. The defendants Dickerson and Sebree, residents of Arizona, were served in that state under the "long arm" statute, ORS 14.035.

The complaint and the affidavits of the parties disclose that plaintiff is an Oregon corporation with its main office in Beaverton, Oregon. It manufactures and sells throughout the United States athletic footwear and equipment. The defendants were principals and officers in a retail sporting goods store known as "Bill Lapes Sporting Goods, Inc.," an Arizona corporation located in Pima County, Arizona. Defendant Dickerson is an attorney and defendant Sebree is an accountant. For the sake of brevity the Bill Lapes Sporting Goods, Inc., Dickerson and Sebree will hereinafter be referred to as defendants.

The defendants, after being first contacted by a salesman for plaintiff, expressed an interest in purchasing plaintiff's footwear and equipment. Before any transactions were consummated, plaintiff requested and received from each of the defendants an agreement in writing personally guaranteeing any indebtedness owing plaintiff by the retail store. These agreements were executed by the defendants in Arizona and mailed to plaintiff's main office. Financial statements of the defendants, including a letter from their bank, were also forwarded to the plaintiff. From March 1974 until June 1975, defendants ordered either by telephone, written purchase orders, or direct contact by plaintiff, athletic shoes and equipment. Upon a delinquency in this account plaintiff demanded payment from the defendants under the guarantee agreements. Defendants notified plaintiff

that they were not legally responsible for the store's obligation. It was not until this time, according to the plaintiff, that it was aware that the defendants had concealed from plaintiff that the written guarantees were unenforceable under Arizona law. Plaintiff seeks punitive damages and the amount due under the open account on the basis of false misrepresentation and a "breach of an implied covenant of good faith and fair dealing by entering into the personal guarantee agreements which they have not and never intended to honor."

The trial court ruled that defendants were not transacting business in Oregon and sustained the motion to quash the summons and complaint. Relevant portions of ORS 14.035 provide:

"(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause or action or suit or proceeding arising from any of the following:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

"* * * * *

"(3) Service of summons on any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the summons and copy of the complaint upon the defendant outside this state, in the manner provided in ORS 15.110. Such service shall have the same force and effect as though summons had been personally served within this state.

"(4) Only causes of action or suit or proceedings arising from acts enumerated in this section may be asserted against a defendant in an action or suit or proceeding in which jurisdiction over such defendant is based upon this section.

"* * * * *."

[ 272 ]

The trial court did not consider nor rule on subsection (1)(b) of this statute, although plaintiff pleaded that defendants had committed a tortious act within the state of Oregon. Plaintiff contends that under either subsection (1)(a) or subsection (1)(b) of ORS 14.035, its cause of action comes within the language of the "long arm" statute.

We do not consider whether defendants were transacting business in Oregon as provided in subsection (1)(a) of this statute. However, we are of the opinion that the plaintiff's complaint and the affidavits of the parties[1] support plaintiff's contention that defendants committed a tortious act in Oregon. The defendants in their "written special appearance" made the following statement:

> "* * * [T]he tort, if it was committed, was committed in the State of Arizona, and there was no tortious act committed within the State of Oregon, because the documents, the alleged guarantees, were signed in Arizona; the contracts were entered into in Arizona, and the defendants were never in Arizona (*sic*) from the time of entering into the agreement, through the present."

Defendants further argue that since they were not engaged in interstate commerce the ruling in *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1968), *cert denied* 393 US 1093 (1969), would not be applicable. It was said in that decision as follows:

> "If Western Seed had established by its affidavits supporting its motion to quash that the sale out of which the pending action arose was an isolated transaction, and that Western Seed did not engage in interstate commerce, we might have a different question. See *Oliver v. American Motors Corp.,* 70 Wash2d 875, 425 P2d 647 (1967). * * *" 250 Or at 275.

The author of *State ex rel Western Seed v. Campbell, supra,* subsequently ruled in the case of *Black & Company v. Nova-Tech, Inc.,* 333 F Supp 468 (D Or 1971), that "the presence in Oregon of the unregistered securities satisfied the first requirement." 333 F

---

[1] *State ex rel Ware v. Hieber,* 267 Or 124, 127, 515 P2d 721 (1973).

Supp at 472. The issue involved in that case was whether the court had long arm jurisdiction over California lawyers alleged to have participated in sales of unregistered securities within Oregon. The "first requirement" as noted above, was "the defendant purposefully avails himself of the privilege of acting within the forum state or of causing important consequences in that state." 333 F Supp at 472.

In an action for defamation, it was held in *State ex rel Advanced Dictating v. Dale,* 269 Or 242, 524 P2d 1404 (1974), that a telephone conversation between an employe of defendant in Florida and a person in Oregon was "sufficient evidence for the trial court to find that a slanderous statement was published in Oregon." This decision cited with approval *Murphy v. Erwin-Wasey, Inc.,* 460 F2d 661 (1st Cir 1972):

> "*Murphy v. Erwin-Wasey, Inc.,* 460 F2d 661 (1st Cir 1972), was an action for fraudulent misrepresentation. Defendant agreed to pay plaintiff 3 and 1/3 per cent of defendant's billings. Plaintiff contends that defendant sent him false representations of its billings. Defendant was a foreign corporation with no connection with Massachusetts except for sending the allegedly false representations through the mail to the plaintiff in Massachusetts. '* * * Where a defendant knowingly sends into a state a false statement intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. * * *' 460 F2d at 664." 269 Or at 247.

> "* * * We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger. * * *" *Murphy v. Erwin-Wasey, Inc., supra,* 460 F2d at 664.

*See Parke-Bernet Galleries, Inc. v. Franklyn,* 26 NY2d 13, 308 NYS2d 337, 256 NE2d 506 (1970); *R.F.D. Group Limited v. Rubber Fabricators, Inc.,* 323 F Supp 521 (SD NY 1971).

In an action for negligence against a bank located in Alabama which allegedly failed to notify plaintiff, an automobile dealer in Illinois, that a purchaser's draft was dishonored, the court said in the case of *Jack O'Donnell Chevrolet, Inc. v. Shankles,* 276 F Supp 998 (ND Ill 1967),

"* * * [W]e believe that when declining to honor and delaying notice of dishonor of the checks payable to plaintiff the Bank contemplated that such actions would cause injury to an Illinois corporation in Illinois. * * *" 276 F Supp at 1002.

"* * * [A] key inquiry in cases where a nonresident defendant commits an act outside of Illinois which has resulting effects within this state, is whether the defendant had reason to anticipate that his activities would have an effect * * *." 276 F Supp at 1002.

As stated in *State ex rel Western Seed v. Campbell, supra:*

"The Illinois rule is significant in this case because the Oregon statute was copied from the Illinois statute after the *Gray* case [*Gray v. Amer. Radiator & Sanitary Corp.,* 22 Ill 2d 432, 176 NE2d 761 (1961)] had been decided. When one state borrows a statute from another state, the interpretation of the borrowed statute by the courts of the earlier enacting state ordinarily is persuasive. See *Fleischhauer v. Bilstad et al,* 233 Or 578, 379 P2d 880 (1963) (presumption that other state's interpretation is governing); *School Dist. No. 1 v. Rushlight and Co.,* 232 Or 341, 345, 375 P2d 411 (1962). And see *Vandermee v. District Court,* —— Colo ——, 433 P2d 335 (1967) (adopting Illinois interpretation of similar long-arm statute)." 250 Or at 270-71.

We are of the opinion that the defendants knew that credit would not have been extended to their retail outlet unless they personally guaranteed its operation, and by placing in the mail their personal guarantees along with their financial statements they could anticipate that plaintiff would look to them personally for delinquencies in their account.

For the reasons given and the relevant law derived from the decisions dealing with similar problems, we

hold that the defendants as nonresidents were within the term of ORS 14.035(1)(b). It follows that the order dismissing the case must be reversed, and it is remanded for further proceedings in accordance with this opinion.

Reversed.