Argued and submitted May 16, affirmed July 28, 1980

# PACIFIC FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION,
*Respondent,*

*v.*

# FLATHEAD PROPERTIES, INC., et al,
*Defendants,*

*and*

# SCHAUDT, STEMM & WALTER, INC.,
*Appellant.*

(No. 74-5641, CA 15699)

614 P2d 1210

Kay Kiner James, Eugene, argued the cause for appellant. With her on the briefs were Darst B. Atherly, and Thwing, Atherly & Butler, Eugene.

Harold D. Gillis, P. C., Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

The garnishee (Schaudt, Stemm and Walter, Inc.) appeals from the judgment of the trial court entered in favor of plaintiff/garnishor on allegations against the garnishee after two Notices of Garnishment were served in attempting to collect an outstanding judgment against defendant Schaudt. We affirm.

Schaudt was indebted to plaintiff as the result of a judgment entered against him and others in the Circuit Court for Lane County and which remained partially unsatisfied at the time of this proceeding. In attempting to reach funds to apply on that judgment plaintiff served Notices of Garnishment on the garnishee on August 26, 1977, and again on May 12, 1978. In response to both notices the garnishee stated that it had no property in its possession belonging or owing to Schaudt.

Garnishee is incorporated and has elected to be treated as a "subchapter S" corporation for tax purposes. Schaudt is the President of the company, owns 40% of the corporate stock and is employed by it as a structural engineer. Three other persons own various portions of the remaining 60% of the corporate strock. The financial arrangements of the corporation, because of its "subchapter S" status, are similar to those of a partnership.

On the morning of August 25, 1977, Schaudt approached the other shareholders and requested that a stockholders' meeting be held that day. The minutes of that meeting reflect that it began at 3:45 p.m. at the corporate office, and that Schaudt requested that he be given an advance on his August salary. Employees are normally paid on the first and 16th of each month for work performed to that time. Schaudt explained to the other shareholders, who were already aware of the outstanding judgment, that he had met with his attorney regarding efforts of plaintiff to collect the judgment and had been advised to request payment of his

salary in advance. The other shareholders voted to make the advance, with Schaudt abstaining. In response to interrogatories the garnishee stated that its stockholders voted to make the salary advance to Schaudt in order to protect him from garnishment.

At the same meeting all of the stockholders voted to disburse as dividends the accumulated corporate profits on which the shareholders were required to pay income taxes because of their "subchapter S" election. The minutes state:

"After expressing his concern regarding income taxes the stockholders will be required to pay on this years corporate profits, Ray V. Walter made a motion that tomorrow, August 26th, the Corporation transfer $35,000.00 from the savings account to the checking account and that $40,000.00 then be disbursed to the stockholders to defray projected taxes."

The motion passed unanimously, whereupon the meeting adjourned at 4:25 p.m.

At 3:55 p.m. on the afternoon of the stockholders' meeting, only 10 minutes after the meeting began, the sheriff attempted to serve a Notice of Garnishment on the garnishee corporation at its office by serving Ray Walter, its Vice-President. The sheriff was told that Mr. Walter was not in the office. There was evidence that the regular receptionist was out that day and that a temporary receptionist, who was unfamiliar with the members of the firm, was the one who misinformed the sheriff. The sheriff returned the following morning, August 26, at 8:50 a.m. and affected service of the Notice of Garnishment.

The check for the salary advance was written and given to Schaudt following the meeting on August 25, 1977. The checks for the disbursement of the profits were also dated August 25, but the transfer of funds from the garnishee's savings account to the checking account was not accomplished until the next day. One employee stockholder testified that he believed the dividend checks had also been distributed to

the stockholders following the meeting on the 25th, but with the understanding that they not be negotiated until the funds were transferred to the checking account. He was not certain, however, when the dividends were received. None of the other members of the firm, including Schaudt, could remember when they received the checks, but three of the checks were deposited on August 26, and Schaudt's check was deposited on August 30, 1977.

The garnishee stated in answers to Interrogatories that on September 1, 1977, an oral agreement with Schaudt was reached whereby he would continue to be paid in advance, and he was paid in advance up to the time of trial.

In its allegations against the garnishee, plaintiff contested the responses which stated that the garnishee had no property in its possession belonging to Schaudt. After trial to the court, a general finding was made in favor of plaintiff for $16,229.78 on the August 26, 1977, garnishment and for $179.28 on the May 12, 1978, garnishment.[1]

Garnishee contends on appeal that it is not liable for the salary advances to Schaudt because they were made for a bona fide business reason: to keep Schaudt in the firm. The garnishee contends it had reasons to believe that Schaudt would have left the company had a garnishment of his salary taken place. As to the dividend, the garnishee argues that there was no evidence that it was still in possession of the dividend check when the notice of garnishment was served. It further argues that the distribution of the dividend was solely for tax reasons, and that whatever the motive for issuing the dividend at that time, it does not effect the validity of the payment once it was made. It contends that the only issue is whether, in

---

[1] Plaintiff claimed to be entitled to the $16,000 which was Schaudt's share of the dividend issued and to 25% of the salary which would have been due on the dates the notices of garnishment were served had Schaudt not been paid in advance. ORS 23.185.

[411]

fact, it had funds owing to Schaudt at the time the Notice was served, and relies on the prior delivery of the check to establish that it had no such funds.

A garnishment is an action at law. *Case v. Noyes,* 16 Or 329, 19 P 104 (1888); *Argonaut Ins. Co. v. Ketchen,* 243 Or 376, 413 P2d 613, 19 ALR3d 1386 (1966); *and see Redwine v. Cedco, Co., Inc.,* 235 Or 76, 382 P2d 855 (1963). We cannot set aside the general finding of the trial court if it is supported by any substantial evidence or any reasonable inferences that may be drawn therefrom. *Montgomery v. Wadsworth Plumbing,* 278 Or 455, 564 P2d 703 (1977). On review we look at the evidence in the light most favorable to the prevailing party, in this case the plaintiff. *See Hall v. Gordon,* 284 Or 49, 584 P2d 1374 (1978).

A garnishee is required, pursuant to ORS 29.280, to furnish the sheriff "with a certificate, designating the amount and description of any property in his possession belonging to the defendant, or any debt owing to the defendant * * *." The garnishee is held liable to the plaintiff for the value of any property of defendant in its possession at the time the Notice was served. ORS 29.360.

We address first the issue of the dividend distributed by the garnishee. Assuming that delivery of the checks is the critical event, as the issue is drawn here, the trial court, in finding generally for the plaintiff, could reasonably have inferred from the evidence that the dividend checks were not distributed until August 26, 1977, after the funds were transferred from the savings account to the checking account. It would follow that the court could have inferred that Schaudt did not receive his check for $16,000 until after the Notice of Garnishment was served. Viewing the issue as one of fact and the evidence in the light most favorable to the plaintiff, we conclude that there is substantial evidence to support a finding that the garnishee still had Schaudt's share of the dividend in

its possession when the notice of garnishment was served.[2]

■    Additionally, we note that a garnishee who is shown to have owed a debt to the debtor shortly before the garnishment has the burden of proving that the payment to the debtor was made before the notice of garnishment was served. *Willis v. Holmes,* 28 Or 265, 42 P 989 (1895). The trial court here would have been justified in concluding that the garnishee failed to carry that burden.

As to the salary advance, the evidence, viewed most favorably to plaintiff, is that the corporation, of which Schaudt was President and a 40% shareholder, conspired with Schaudt by advancing his August salary for the purpose of defeating the anticipated garnishment by plaintiff. That conclusion is supported by the corporate minutes and by the garnishee's answers to Interrogatories. The trial court was not required to believe the testimony asserting the further justification for the advance — that it was necessary to keep Schaudt in its employ.

Two Oregon cases are helpful in deciding whether the actions of the garnishee with regard to Schaudt's salary subject it to liability. The first, *Coastal Adj. Bureau v. Hutchins,* 229 Or 418, 367 P2d 430, 93 ALR2d 992 (1961), involved a salesman who had a drawing account with his employer, and at all pertinent times was overdrawn on that acount. The Supreme Court held that

---

[2] Although plaintiff's contention is that there is evidence from which the trial court could have inferred that the dividend check was not delivered to Schaudt until after the Notice of Garnishment was served, and we agree that there is, it appears to us that even if the check had been delivered on August 25, but not paid until after the Notice was served, the garnishee held money owing or belonging to Schaudt at the critical moment of service. In this connection, see ORS 73.8020(1)(b) and *Cornell v. Stimson Lumber Co.,* 257 Or 215, 477 P2d 898 (1970), which might arguably militate against that legal conclusion. Because the case was not argued along that line, we do not decide that question or pursue that legal reasoning other than to note that the check represented the amount the garnishee owed Schaudt as his share of the profits at that time.

"* * * Where an employer *in good faith* advances expense money and a drawing account to a salesman in anticipation of future sales and commission, the employer is not liable to creditors of the employe upon a notice of garnishment returned "nothing owing", so long as the return honestly reflects the state of the account between the parties, and so long as the account between the parties is a *bona fide* account reflecting transactions directly and necessarily connected with the employment relationship. * * *" 229 Or at 422. (Emphasis supplied.)

There was no suggestion in that case that the advances were made to defeat garnishment or that they were not made in good faith.

At the other extreme is *Creditors Protective Ass'n v. Balcom,* 248 Or 38, 432 P2d 319 (1967). In that case the debtors, husband and wife, formed a corporation after their logging partnership encountered financial difficulties; each of them held 1% of the corporate stock and their daughter held the remaining 98%. The debtors took salary advances for themselves at will and collected rent from the corporation, even though they were purportedly in debt to the corporation on an unsecured note which the corporation made no effort to collect. The court found that the debtors sought to insulate their income through a family corporation and participated in a scheme to defraud their creditors, through advance payments and loans from the corporation to the debtors, who, with their daughter, controlled the company. The corporation and the debtors' daughter were held liable for sums wrongfully paid to the debtors. The court stated:

"* * * We hold that one who actively participates with the debtor in a fraudulent scheme to hinder the creditor's enforcement of his judgment, and, pursuant to that scheme, withholds amounts due on garnishment, is personally liable for the amount that garnishment would have realized. * * *" 248 Or at 45.

The court distinguished *Coastal Adj. Bureau, supra,* by noting:

[414]

"* * * In the case at bar, the employee, as manager, in making advance payments on wages, was dealing with himself, not at arm's length. The other means employed to totally insulate income demonstrate an integrated, collusive scheme to defraud." 248 Or at 44.

In the earlier case the court stated:

"A garnishment does not give the plaintiff any greater rights against the garnishee than the defendant himself possesses, *except in case of fraud. * * *" Coastal Adj. Bureau v. Hutchins.* (Emphasis supplied.)

*See also Investment Service Co. v. Smither,* 276 Or 837, 556 P2d 955 (1976); *Sabin v. Anderson,* 31 Or 487, 49 P 870 (1897); *cf. In re Freitag's Estate,* 165 Or 427, 431, 107 P2d 978 (1940).

██  Where the garnishee is involved in a collusive scheme to defraud the creditors of the debtor, the plaintiff/garnishor may recover from the garnishee sums paid by it to the debtor pursuant to such a scheme. There is substantial evidence in the record before us from which the trial court could reasonably have inferred that the garnishee participated in such a scheme with Schaudt. The explicit purpose of the salary advance made on August 25, 1977, was to prevent plaintiff from collecting its judgment by garnishment. The court was not required to believe the testimony of other stockholders of the garnishee corporation to the effect that they were motivated by a legitimate business purpose in making the advance.

Affirmed.