Argued and submitted September 3, 1981, affirmed July 7, 1982

# NORTH PACIFIC STEAMSHIP CO.,
*Petitioner on Review,*

*v.*

# GUARISCO et al,
*Respondents on Review.*

## (CA 13405, SC 27511)
647 P2d 920

Bruce M. Hall argued the cause and filed briefs for petitioner on review. With him on the briefs were Wood, Tatum, Mosser, Brooke & Holden, P.C. and Daniel M. Ricks, Portland.

William M. McAllister argued the cause and filed briefs for respondents on review. With him on the briefs was Richard C. Josephson, Portland.

CAMPBELL, J.

Before Denecke, Chief Justice, Lent, Linde, Peterson and Campbell, Justices.

Peterson, J., filed a concurring opinion in which Linde, J., joined.

———

342-b

## CAMPBELL, J.

Plaintiff North Pacific Steamship Company (North Pacific), a judgment creditor, instituted this suit, styled as a creditor's bill in equity, against the several individual and corporate defendants in an effort to have their assets applied against its unsatisfied judgment. The judgment debtor, Pyramid Bulkcarriers (Bulkcarriers), is named as defendant but its assets have long since been depleted. The principal targets of this suit are several allied corporations and a couple of individuals who managed and controlled Bulkcarriers. In brief, North Pacific seeks to have these defendants held liable for Bulkcarriers' judgment debt under theories of improper diversion of corporate opportunities and "piercing the corporate veil."

From a decree generally in favor of North Pacific, several of the defendants appealed; North Pacific cross-appealed. The Court of Appeals reversed upon a finding that the trial court was without jurisdiction over the defendants. 49 Or App 335, 619 P2d 1302 (1980), *opinion adhered to, reh den,* 50 Or App 285, 622 P2d 1142 (1981). North Pacific petitioned this court for review alleging this finding to be erroneous. We accepted review and are faced with the single issue: For purposes of this creditor's bill in equity, were the contacts between the several defendants and this state such as to make the trial court's exercise of jurisdiction over them consonant with applicable statutes and the Due Process Clause?[1]

Cases of this sort have a tendency to generate voluminous and complex records, and this case is

---

[1] In those cases where the jurisdiction of the court rests upon the service of process out-of-state on a non-resident defendant under the "long arm" provisions of ORS 14.035, the analysis is two-pronged: 1) do the jurisdictional facts fall within the terms of the statute; and, if so, 2) do federal constitutional due-process guarantees permit the exercise of personal jurisdiction over this defendant? *State ex rel Academy Press v. Beckett,* 282 Or 701, 708, 581 P2d 496 (1978). This court has held that, to the extent the jurisdictional facts fall within the terms of ORS 14.035, that statute is to be construed to permit exertion of jurisdiction over non-resident defendants to the limits allowed by the due-process clause. *State ex rel Western Seed v. Campbell,* 250 Or 262, 271, 442 P2d 215 (1968). *Compare* ORCP 4 L.

no exception.[2] Fortunately, however, the evidence relevant to the jurisdictional issue may be briefly stated. First, the cast of characters: Plaintiff North Pacific is a foreign corporation, incorporated under the laws of Liberia, apparently owned and controlled in large part by Portland industrialist Dr. Leonard Schnitzer and attorney Kenneth Lewis. During times material to the present controversy, North Pacific was not licensed to do business in Oregon and was represented here only by its agent, Lasco Shipping Company.

Bulkcarriers, also a Liberian corporation, was incorporated in 1969, maintained its principal offices in Bermuda, and conducted its business out of Louisiana. Its primary business was ocean-going bulk transport with time-chartered vessels in the maritime trade between Gulf ports, the Caribbean, and South America. The original ownership of Bulkcarriers was equally divided between defendant Hellenic, Inc., and another unrelated corporation. Hellenic and other defendants, however, gradually acquired control of Bulkcarriers and at times relevant here owned up to 80. of its stock. In addition, Hellenic owns 100. of the stock of defendant Pyramid Bulkhandling, Inc. (Bulkhandling).

Hellenic, in turn, is a closely-held family corporation controlled by defendant Peter V. Guarisco, a Louisiana resident. Guarisco, who apparently has his fingers in many pies, also is a principal owner, either individually or through family connections, and manager of defendant Pyramid Ventures Group, Inc., (Ventures) and the other corporate defendants. In addition, he was Chairman of the Board of Bulkcarriers, Bulkhandling, and Ventures, as well as an officer or director of the other defendants.

Defendant Ventures was formed under the direction of Guarisco and defendant Donald Scafidi and incorporated in Louisiana. Its principal purpose was apparently to operate as an agent of Bulkcarriers and not to acquire

---

[2] Actual trial of North Pacific's suit lasted several weeks and generated 1300 pages of transcript; over 500 exhibits were introduced into evidence. The fact that seven years have now elapsed between the time of the original filing of this suit and this opinion is indicative of the complexity of the issues, both jurisdictional and on the merits, and the tenacity of the parties.

assets and income for itself. Defendant Scafidi, a Louisiana resident, was the "right-hand man" of Guarisco in these endeavors; although he had little capital investment in the various corporate defendants, he was an officer or director of at least several of them and was involved in their management and operations.

The present controversy had its genesis in a charter agreement entered into between North Pacific and Bulkcarriers. In 1970, North Pacific acquired two self-loading ocean-going cargo vessels, the Pacsea and Pacsun, which it made available for charter operations. Bulkcarriers became interested in the vessels for its Gulf operations and entered into charter negotiations with North Pacific. Schnitzer and Lewis, as officers of Lasco, North Pacific's Portland agent, negotiated with Scafidi and a Mr. Richard V. Tedesco, agents for Bulkcarriers, in Portland and Louisiana to effect the charter. The charter contract, as finalized in late 1970, was between Bulkcarriers and North Pacific and was to run for several years.

In the spring of 1971, difficulties began to develop. North Pacific contends that Bulkcarriers, realizing that a West Coast longshoremen's strike was imminent and that the financial market for ship chartering would plummet as a result, tried to back out of the deal. Bulkcarriers argued that operational problems with the ships and crews, which were supplied by North Pacific, and the dissatisfaction of their principal customers justified their cancelling of the charter. In any event, Bulkcarriers ceased charter payments and the ships were returned to North Pacific on June 30, 1971, one day before the strike.

At North Pacific's instance, arbitration of the dispute ensued. Proceedings were held in Portland, New Orleans, and New York during 1971 and 1972 and resulted in a finding that Bulkcarriers had wrongfully breached its charter contracts as of June 30, 1971. The arbitrators set North Pacific's damages at $842,350.67.

Shortly after the award was announced, North Pacific brought an action in Federal District Court for the Eastern District of Louisiana to have the award entered as a judgment of the court. On May 18, 1973, judgment was

entered in favor of North Pacific against Bulkcarriers for the amount stated plus interest at 7 percent per annum until paid. North Pacific executed upon Bulkcarriers' Louisiana bank account, capturing $118,000, but inasmuch as Bulkcarriers had no further assets subject to execution North Pacific's judgment has gone largely unsatisfied. Further efforts by North Pacific to obtain satisfaction in Louisiana bogged down, and in 1975 it instituted the present action in Multnomah County Circuit Court. North Pacific's approach here was two-fold: 1) it brought a cause of action at law for fraud alleging that Scafidi and Tedesco made material misrepresentations during the contract negotiations; and 2) it brought the present suit styled as a creditor's bill in equity.

■ ■ Defendants from the beginning have vigorously challenged the Oregon courts' jurisdiction over them. Soon after service upon them they all joined in a special appearance, by way of motion to quash service, requesting dismissal of the suit upon the ground that the court lacked personal jurisdiction over them. The circuit court found jurisdiction over Bulkcarriers, Ventures, and Scafidi based upon torts and business transactions alleged to have occurred within the state, but dismissed the complaint as to the rest of the defendants. Bulkcarriers, Ventures, and Scafidi petitioned this court for a writ of mandamus seeking to overturn the circuit court's determination as to them; this court, however, denied the petition.[3] Meanwhile, North Pacific amended its complaint and re-served the other defendants. These defendants again joined in a motion to quash. This time, however, the circuit court denied the motion as to Guarisco, Hellenic, and Bulkhandling.

---

[3] North Pacific has contended that this court's prior refusal to issue the alternative writ of mandamus is a binding determination on the jurisdictional issue. Where a trial court holds that it has personal jurisdiction over a defendant, we have permitted the defendant to challenge such a ruling either through petition for mandamus or through appeal. *State ex rel Ware v. Hieber,* 267 Or 124, 128, 515 P2d 721 (1973). Mandamus, an extraordinary remedy, is a discretionary writ and not a writ of right. *State ex rel Willamette Nat. Lumber Co. v. Circ. Ct. for Multn. Cty.,* 187 Or 591, 598, 211 P2d 994 (1949). It follows that when this court denies a petition for mandamus without ruling on the merits of the petitioner's claim, such a denial does not necessarily preclude consideration of the issue upon appeal. *See* Annot., 21 ALR3d 206, 218 [§ 5], 248 [§ 12] (1968); 52 Am Jur2d Mandamus §487 (1970).

Defendants then moved for a order of dismissal upon grounds of *forum non conveniens,* alleging that a similar action was already pending in Louisiana, a more convenient forum; this motion, however, was also denied.

The battle of motions and pleadings continued until finally, in late 1978, the case was tried. The action at law for fraud was split from the creditor's bill in equity for separate trial and then stayed pending a final decree in this suit. A final decree was entered in January 1979 generally in North Pacific's favor. In its findings of fact and conclusions of law the court, in relevant part, found and concluded as follows: the court had jurisdiction over all the remaining defendants; none of the defendants was the "alter ego" of Guarisco or Hellenic; and defendants Ventures, Bulkcarriers, and Bulkhandling had engaged in a plan to divert business from Bulkcarriers to Bulkhandling and Ventures, and ultimately to defendant Transbulk, Ltd., for the purpose of avoiding payment of North Pacific's judgment. A decree was entered against Ventures, Bulkcarriers, and Bulkhandling for the sum of $1,009,769.32 (the amount of the outstanding judgment against Bulkcarriers, plus interest). In addition, the court concluded that North Pacific had not established any basis for recovery under either fraud or general equitable principles and noted that the former finding would operate to collaterally estop North Pacific's maintenance of the pending fraud action.

Several of the defendants appealed; North Pacific cross-appealed. The Court of Appeals reversed, finding that the circuit court had improperly exercised jurisdiction over the defendants for purposes of the creditor's bill. In an appeal by North Pacific from summary judgment entered for defendants in the fraud action, however, the court in reversing noted that personal jurisdiction might exist over the relevant defendants for purposes of that action. *See* 49 Or App 331, 333, 619 P2d 1306 (1980). We accepted review of the creditor's bill suit in the hopes of clearing up this jurisdictional muddle.

As noted above, the single issue before us is whether the circuit court's exercise of jurisdiction over the defendants in this case was proper under applicable

statutes and consonant with federal constitutional due-process guarantees.[4]

The brief recital of the facts evidences, at most, only a tenuous connection between the several defendants and this state. None of the defendants is a resident or domiciliary of Oregon, none was "present" here at the time the suit was filed, and none has ever engaged in business activities here, other than Bulkcarriers' charter transaction. Moreover, none of the defendants has any assets, real or personal, legal or equitable, located within Oregon. North Pacific makes three arguments to justify the circuit court's exercise of jurisdiction in this case: 1) The court had jurisdiction over the defendants for purposes of the concomitant fraud action and this validates the exercise of jurisdiction in this creditor's bill suit. 2) Defendants' out-of-state activities (viz., the diversion of corporate opportunities and transfer of assets) were accomplished for the purpose of preventing satisfaction of North Pacific's judgment and such activities had a substantial enough effect in this state to justify jurisdiction over the defendants. 3) The present suit arises out of, and is sufficiently connected with, Bulkcarrier's in-state activities to justify jurisdiction over Bulkcarriers and, through it, the rest of defendants.

The applicable Oregon statute pertaining to personal jurisdiction over non-resident defendants in force at the time this suit was filed was ORS 14.035(1),[5] which provided, in relevant part:

> "Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person * * * to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:
>
> "(a) The transaction of any business within this state;
>
> "(b) The commission of a tortious act within this state; * * *."

---

[4] Given our determination, outlined below, that the applicable Oregon statutes do not allow the exertion of personal jurisdiction over the defendants in this case, we do not reach defendants' constitutional arguments.

[5] ORS 14.035 was repealed by Or Laws 1979, ch. 284, § 199 and replaced with ORCP 4. Despite this repeal, it is clear that ORS 14.035 remains the applicable statute as far as this case is concerned. ORCP 1 C. *See generally,* Annot., 19 ALR3d 138 (1968).

## 1. Jurisdiction from concomitant fraud action?

In addition to the creditor's bill, North Pacific brought a fraud action alleging, in substance, that Bulkcarriers through its agents Scafidi and Tedesco made fraudulent misrepresentations during the charter contracting negotiations which induced North Pacific to enter into the charter agreement without sufficient financial guarantees. Since part of the contracting took place in Portland, Oregon courts could exercise personal jurisdiction over defendants Bulkcarriers and Scafidi for the purpose of adjudicating this fraud cause of action. ORS 14.035(1)(b); *State ex rel; Academy Press, Ltd. v. Beckett,* 282 Or 701, 715-717, 581 P2d 496 (1978); *BRS, Inc.v. Dickerson,* 278 Or 269, 563 P2d 723 (1977). *See generally,* 1 Restatement (Second) of Conflicts of Law §§ 36 and 49 (1971); Annot., 24 ALR3d 532, 565 (1969). Indeed, the circuit court did find an adequate basis for jurisdiction over the defendants in that action and this conclusion was affirmed by the Court of Appeals. 49 Or App 331, 619 P2d 1306 (1980).

North Pacific is attempting to use the jurisdiction over the defendants obtained in that action to justify jurisdiction over them in this creditor's bill suit. The Court of Appeals implicitly rejected this approach when it dismissed this suit for lack of jurisdiction over the defendants while remanding the fraud action for trial. We agree.

■ The statute upon which North Pacific is relying, ORS 14.035, provided in section (4):[6]

"Only causes of action or suit or proceedings arising from acts enumerated in this section may be asserted against a defendant in an action or suit or proceeding in which jurisdiction over such defendant is based upon this section."

---

[6] This awkwardly phrased provision has since been replaced by ORCP 4 N., which provides:

"In any action brought in reliance upon jurisdictional grounds stated in [ORCP 4 B. through L. pertaining to "long-arm" jurisdiction over non-resident defendants], there cannot be joined in the same action any other claim or cause against the defendant unless grounds exist under this rule, or other statute, for personal jurisdiction over the defendant as to the claim or cause joined."

The drafters of ORCP 4 N. indicated that they viewed it to be the equivalent of ORS 14.035(4). *See* commentary to ORCP 4.

The intent of this provision is that, despite the liberalization of the rules pertaining to joinder of claims against already served defendants, where the defendant is a non-resident of the state and jurisdiction was obtained over it through use of a "long-arm" statute, each separate claim or cause of action stated against such defendant must have its own independent jurisdictional grounds. *See generally* Restatement (Second) of Judgments § 12 (Tent. Draft No. 5, 1978). For example, where plaintiff brings a tort action against a non-resident defendant and obtains jurisdiction over him based on the fact that the tort occurred in-state, a separate breach of contract action against the same defendant cannot be joined unless there are independent grounds pertaining to the breach of contract for finding jurisdiction over the defendant on that claim.

■    Applying this rule to the case at bar, it is clear that personal jurisdiction over Bulkcarriers and Scafidi for purposes of the fraud action does not translate to personal jurisdiction over them and the rest of the defendants for purposes of this creditor's bill. Although the two cases are related, they are too tenuously connected to allow the personal jurisdictional basis for one to suffice for the other.

We therefore conclude that for personal jurisdiction to be exercised over the defendants in this creditor's bill suit there must be established sufficient and adequate contacts between them and this state relating to the bases for relief sought here — contacts relevant to the fraud action are not necessarily relevant to this suit.

## 2. Out-of-state acts with in-state effects.

■    Part of the basis for North Pacific's claim for relief in this creditor's bill suit is its allegations that the defendants conspired to deplete Bulkcarriers' assets and to have corporate opportunities available to it diverted to other of the defendants, particularly Bulkhandling and Transbulk, for the purpose of preventing North Pacific from satisfying its judgment against Bulkcarriers. North Pacific contends that out-of-state acts by a non-resident defendant done for the purpose of causing an in-state effect are sufficient to give this state's courts personal jurisdiction over the defendant.

Under certain circumstances this may well be a valid proposition. *See* 1 Restatement (Second) of Conflicts of Law §§ 37 and 50 (1971); Annot., 24 ALR3d 532, 565 [§ 4(b)] (1969). Before personal jurisdiction can be predicated upon such a ground, however, the applicable jurisdictional statute must allow it. ORS 14.035(1) only speaks in terms of transacting business in this state (subsection (a)) or of committing a "tortious act" in-state (subsection (b)). We have held that ORS 14.035(1)(b) does apply to out-of-state acts having in-state effects *(see, e.g., BRS, Inc. v. Dickerson, supra)*, but consistent with the express language of the provision, this has only been in actions sounding in *tort*.[7]

The present case is, in contrast, a creditor's bill in equity; North Pacific is calling upon the equitable powers of the court in an effort to satisfy its judgment out of the assets of others than the judgment debtor. This is not an action sounding in tort notwithstanding the tortious overtones to North Pacific's allegations. Diversion of corporate opportunities, transfer of assets between related corporations, and manipulation of a corporation by an individual or a parent corporation may be inequitable *vis-a-vis* creditors of the affected corporations, but they are not *per se* tortious. North Pacific did not bring this suit to set aside "fraudulent conveyances" nor did it specifically allege, other than in the companion fraud case, a cause of action in tort and seek tort remedies.

---

[7] The "tortious act" language of ORS 14.035 (1)(b) has been replaced, with regard to a foreign act/local injury, by ORCP 4 D which provides for personal jurisdiction over non-resident defendants:

"In any action claiming injury to person or property within this state arising out of an act or omission outside this state by defendant, provided in addition that at the time of the injury, either:

"D.(1) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

"D.(2) Products, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

The drafters' comment to ORCP 4 D. indicates that this provision is intended to apply to contract or tort actions where the plaintiff's injury occurred in-state. We express no opinion as to whether this provision, or ORCP 4 L. (the "catch-all" provision allowing jurisdiction wherever it is not inconsistent with due-process), could have permitted the exertion of jurisdiction in this case, had they been applicable.

■ In any event, North Pacific has not established that the defendants' out-of-state conduct has had any substantial in-state tortious effect. To be sure, the alleged acts may well have severely impacted upon North Pacific, stymieing its attempts to collect on a million-dollar judgment, but a significant tortious effect on interests in this state has not been alleged or shown. North Pacific is not an Oregon corporation. Its incorporators had it incorporated in Liberia, apparently for the purpose of avoiding the incidents of Oregon and American citizenship. And despite the fact that North Pacific finds it advantageous to do business here, setting up an agent corporation for that purpose, it did not register itself to do business in this state. There is some indication in the record that North Pacific is primarily owned and operated by Oregon residents, but the manner, nature, and extent of their injury is anything but clear.[8]

Given the plaintiff's evident reluctance to bring itself within the control, regulation, and protection of our laws and its failure to establish that any interests protected by our laws have been adversely affected by defendants' activities, there is an insufficient basis for finding that any "tortious act" within the purview of ORS 14.035(1)(b) and relevant to the plaintiff's creditor's bill in equity has occurred in this state. Therefore, we conclude, personal

---

[8] Obviously, "injury" to a corporation does not occur in every state where a stockholder resides. If such were the case, a defendant being sued by a large public corporation could be haled into court anywhere in the country. Thus, the fact that two of the owners of North Pacific are Portland residents does not *ipso facto* give this state's courts jurisdiction over any suit alleging injury to it. Bulkcarriers' breach of contract may well have caused significant effects in this state, assuming the ships and crews had to return here to await rechartering. That does not mean, however, that the defendants' Louisiana machinations, which merely financially injured North Pacific and are the basis for this suit, necessarily impacted here. *See Prejean v. Sonatrach, Inc.,* 652 F2d 1260 (5th Cir 1981); *Data Communication Inc. v. Dirmeyer,* 514 F Supp 26 (ED NY 1981).

The presence of an agent corporation in this state does not establish a local injury, inasmuch as the alleged injury was suffered by North Pacific, not Lasco. Nor is it determinative that North Pacific chose to sue here or that it is managed by Portland residents. For a "local injury" to have been established here for purposes of ORS 14.035(1)(b), it was incumbent upon North Pacific, a foreign plaintiff, to show with some particularity how defendants' acts had a tortious effect within this state — bald assertions of local injury will not suffice. In this respect, compare the "local injuries" found in *State ex rel Academy Press v. Beckett, supra,* n. 1; *State ex rel Ware v. Hieber, supra,* n. 3; *State ex rel Western Seed, supra,* n. 1; *State ex rel White Lumber v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968).

jurisdiction over defendants cannot properly be based upon ORS 14.035(1)(b).

## 3. Jurisdiction based on business transacted in-state.

North Pacific's final justification for the circuit court's exercise of personal jurisdiction over defendants is its contention that this suit arises out of the "transaction of business" by Bulkcarriers within this state and that ORS 14.035(1)(a) thus applies. North Pacific then seeks to reach the rest of the defendants with the argument that the interests of the various corporate and individual defendants are so inextricably intertwined and that the financial and managerial inter-connections are so extensive that, for purposes of this suit, there is sufficient "identity" between Bulkcarriers and the rest of the defendants such that personal jurisdiction over it validates personal jurisdiction over them. Assuming *arguendo* that this is true,[9] the question remains whether Bulkcarriers' contacts with this state during the charter contracting may be relied upon to justify the exercise of personal jurisdiction over it in this creditor's bill.

We may start with the assumption that Bulkcarriers, in coming into this state to effect a charter contract concerning vessels physically present within this state, may well have made itself amenable to suit here for disputes arising out of performance or breach of this contract. ORS 14.035(1)(a); *State ex rel White Lumber v. Sulmonetti*, 252 Or 121, 448 P2d 571 (1968). *See generally*, 1 Restatement (Second) of Conflicts of Law § 48 (1971); Annots., 23 ALR3d 551 (1969), 20 ALR3d 1201 (1968). When the charter contract was breached, however, North Pacific chose not to seek relief in Oregon courts but rather had the dispute settled elsewhere. First, it had the dispute

---

[9] *See, e.g., State ex rel Grinnell Co. v. MacPherson*, 62 NM 308, 309 P2d 981, *US cert den* (1957) (service upon subsidiary located within state sufficient to permit jurisdiction over non-resident parent where there was sufficient identity between them to justify finding that there was in fact only one giant "octopus" corporation); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F2d 634 (8th Cir. 1975). *But see Rush v. Savchuk*, 444 US 320, 331-332, 100 S Ct 571, 62 LEd 2d 516 (1980) (forum contacts of several defendants cannot be aggregated to justify jurisdiction over all of them — each defendant's contacts with the forum must be viewed separately for purposes of personal jurisdiction over him); *Velandra v. Regie Nationale des Usines Renault*, 336 F2d 292 (6th Cir. 1964).

submitted to arbitration; then it had the arbitrator's award enforced in Louisiana by having a judgment entered upon it there; and finally, it partially executed the judgment there. Thus, an Oregon breach of contract has been transformed into a partially satisfied Louisiana judgment. Nevertheless, North Pacific contends that those contacts which were relevant to the breach of contract remain relevant to this creditor's bill suit — i.e., that the present suit "arises out of" the 1970 contract.

■ ■    Creditors' bills in equity have been an infrequent topic for discussion by this court. As a general matter, a creditor's bill is an equitable suit to subject a debtor's nonexempt assets to payment of an unsatisfied judgment against him under circumstances where legal remedies are inadequate or unavailable to accomplish that result. *Williams v. Commercial National Bank,* 49 Or 492, 501-502, 90 P 1012, 91 P 443 (1907). *See generally,* Dobbs on Remedies § 1.3, p. 11 (1973); 21 Am Jur2d, Creditors' Bills §§ 1-2 (1981). In order to establish that the available legal remedies are inadequate, the creditor must generally show that his claim has been reduced to judgment and that a legal execution has been attempted and was returned *nulla bona, i.e.,* not fully satisfied.[10] *Creditors Protective Ass'n v. Balcom,* 248 Or 38, 41, 432 P2d 319 (1967); *Ryckman v. Manerud,* 68 Or 350, 357-360, 136 P2d 826 (1913). Other than these general requirements, the jurisdictional basis for a creditor's bill has not been delineated by this court. Courts in other jurisdictions have tended to view creditor's bills as basically *in rem* or *quasi-in rem* proceedings. *See* 21 Am Jur2d, Creditor's Bills 53, § 65 (1981). Under such an

---

[10] Although this court has not addressed the issue, courts in other jurisdictions have held that a creditor's bill may not be based, as a general rule, upon a foreign judgment — the judgment creditor must first translate the foreign judgment into a local one (for this purpose see ORS 24.105 *et seq.*). *See Hotchkiss v. Martin,* 52 So2d 113, 114 (Fla 1951); 21 CJS, Creditors' Suits § 46 (d) (1940); Annot., 129 ALR 506 (1940). This rule appears to be based on the principle that an equitable suit will not lie where adequate legal remedies are available. Thus, the failure to register the foreign judgment locally may defeat the plaintiff's right to an equitable remedy, but does not necessarily work to deprive the court of subject matter jurisdiction over the suit. There is no evidence in the record that North Pacific's Louisiana judgment was filed here under ORS 24.105 *et seq.* Since defendants have not argued the point, however, we express no opinion as to the propriety of the trial court's decree upon this ground.

approach, the court's jurisdiction would be dependent upon and limited by the presence and extent of the debtor's property within the state. *See* 21 CJS, Creditors' Suits § 24 (1940). Since it appears that none of the defendants has any property of any nature within this state, it is questionable whether the courts of this state should exercise jurisdiction to entertain this creditor's bill.

■     Regardless of these concerns, and assuming *arguendo* that personal jurisdiction over the defendants suffices to enable the court to award the relief sought, it is clear that the nature and extent of their contacts with this state are not sufficient to allow the Oregon courts to exercise personal jurisdiction over them *for purposes of* this creditor's bill suit. The language of former ORS 14.035(1)(a), allowing jurisdiction "as to any * * * suit * * * arising from * * *[t]he transaction [by defendant] of any business within this state" cannot be reasonably interpreted to countenance the exercise of jurisdiction over defendants here.

North Pacific's present suit is an effort to obtain satisfaction of a Louisiana judgment. Its claim for relief is based upon conduct of the defendants occurring after the breach of contract and taking place wholly outside of this state. The fact that the contracting took place in this state, indeed even the fact that there was a contract, is no longer relevant in this creditor's bill suit. North Pacific's claim for relief is not based upon the contract, but rather upon a foreign judgment; moreover, it is not based upon the contractual events occurring in this state, but rather upon post-breach events unrelated to the contract occurring wholly out-of-state. Thus, although it may be said as a matter of causation that this suit had its genesis in the contract entered into in 1970 in this state, Bulkcarriers' contacts with this state, relevant as they may have been to a breach of contract action here, are simply not relevant to this creditor's bill suit seeking to obtain satisfaction of a foreign judgment.[11]

---

[11] The Court of Appeals was of the opinion that since North Pacific's breach of contract action had "merged" into the judgment it had obtained in Louisiana, those contacts relevant to that cause of action were not relevant to post-judgment remedies. 49 Or App at 340. The court explained its "merger" findings as follows:

Isolated business contacts between the non-resident defendants and this state, irrelevant to plaintiff's suit cannot be relied upon to base personal jurisdiction over them. *See State ex rel White Lumber v. Sulmonetti, supra,* 252 Or at 127. We conclude, this is a suit "arising from" out-of-state activities by non-residents which have no established impact on Oregon interests and which are separate and independent from the prior contract-related activities and not a suit "arising from" the transaction of business in this state by the defendants within the meaning of ORS 14.035(1)(a). It follows that the circuit court improperly exercised jurisdiction over the defendants in this suit, that its decree is a nullity, and that the decision of the Court of Appeals must be affirmed.[12]

**PETERSON, J.,** concurring.

Although I concur in the result, I disagree with the analysis in part 3 of the court's opinion.

Scafidi and Tedesco, as agents for Bulkcarriers, conducted transactions in Oregon and Louisiana to effect the charter. Tedesco is now deceased. The plaintiff's complaint in this suit alleged multiple theories of recovery. One of the theories of recovery against the defendant Scafidi was that Scafidi, "by reason of [his] actions and handling

"While [Bulkcarriers] did negotiate the contract in Oregon and Oregon would have had jurisdiction over an action on that contract, the action for breach of contract was brought in Louisiana and merged in the judgment obtained there. The facts which could have formed a jurisdictional basis in the contract action cannot be relied upon to establish jurisdiction in this independent and different cause of suit." 50 Or App at 287-288.

The doctrine of merger by judgment, of course, is not strictly applicable here inasmuch as it is based on notions of collateral estoppel and res judicata *(see* Restatement (Second) of Judgments §§ 47-48 (Tent. Draft No. 1, 1973)), concerns not directly pertinent to personal jurisdiction determinations. There is, however, an analogy. When a judgment creditor seeks to enforce the judgment through either legal execution of an equitable creditor's bill, the facts, contacts, and concerns relating only to the underlying claim (which was extinguished by the judgment) are no longer relevant — only those relating to the judgment's enforcement are.

[12] We express no opinion as to whether jurisdiction would have been proper if there had been property within this state of the defendants or if the basis of the present suit had been a judgment originally obtained here. In addition, we note that this is not a situation where the plaintiff has no other available or convenient forum to litigate the issues — to the contrary, a similar suit between the same parties is currently pending in Louisiana, which is arguably the "center of gravity" of this dispute anyway.

of the affairs of Pyramid Bulkcarriers, Inc., [is] also responsible for the judgment [against Bulkcarriers]. * * *" Although the trial judge considered that this was an appropriate theory of recovery, he found against the plaintiff on the merits.

The majority states that the question is whether contacts "with this state during charter contracting may be relied upon to justify the exercise of personal jurisdiction * * * in this creditor's bill." 293 Or at 353. The majority answers the query in the negative, saying:

"* * * Thus, although it may be said as a matter of causation that this suit had its genesis in the contract entered into in 1970 in this state, Bulkcarriers' contacts with this state, relevant as they may have been to a breach of contract action here, are simply not relevant to this creditor's bill suit seeking to obtain satisfaction of a foreign judgment."

ORS 14.025(1) subjected persons to the jurisdiction of Oregon courts "as to any cause of action or suit or proceeding arising from * * * the transaction of any business within this state * * *." Under the statute, the determining factor is the relationship between the cause of action, suit or proceeding and the transaction of business. If the claim arises from the transaction of business, personal jurisdiction exists over the person transacting business. ORS 14.035(1), (4).

Creditors' bills, even though independent actions in form, are usually ancillary in the sense that they are brought to collect a judgment obtained in another proceeding. The proceedings are equitable, and are usually *in rem* rather than *in personam,* being a continuation in effect of the judgment upon which they are founded in order to achieve a satisfaction thereof. *Pierce v. United States,* 255 US 398, 41 S Ct 365, 65 L Ed 697 (1920).

An effort to collect a judgment which arises from the transaction of business is as much a consequence of the transaction of business as the cause of action underlying the judgment. Because creditors' bills are, in a sense, ancillary to the underlying proceeding, I believe that the creditors' bill claim against Scafidi has a sufficiently close nexus to his transaction of business in Oregon to support the conclusion that the claim asserted against Scafidi in

this case can be said to arise from the transaction of business within Oregon. As noted in footnote 1 of the majority opinion, this court has held that ORS 14.035 is to be construed to permit exercise of jurisdiction over nonresident defendants to the limits allowed by the Due Process Clause. *State ex rel Western Seed v. Campbell,* 250 Or 262, 271, 442 P2d 215 (1968). *Compare* ORCP 4L. Although some of the elements of the creditors' bill claim may involve post-breach events unrelated to the contract, the fact that the underlying claim arose from the transaction of business in Oregon creates the necessary causal relationship for the exercise of jurisdiction.

The plaintiff cites *Creditors Protective Ass'n. v. Balcom,* 248 Or 38, 432 P2d 319 (1967), for the proposition that a judgment creditor can proceed by way of a creditors' bill to obtain a judgment against one who, although not a party to the underlying judgment, actively participated in a fraudulent scheme to hinder the creditors' collection of the judgment.[1] The defendants, in their brief, concede that "* * * when an individual causes cash or other tangible property to be withheld or transferred without consideration that to that extent the individual is liable. * * *" The trial court assumed that this theory of recovery was available to the plaintiff against the individual defendants, including Scafidi, but found against the plaintiff under the evidence.[2] I concur with the trial court's analysis of the evidence and with its finding, and would therefore affirm the trial court in denying recovery to the plaintiff on the plaintiff's claim against Scafidi, but not for the reasons stated in the Court of Appeals opinion or in the majority opinion.

Linde, J., joins in this concurring opinion.

---

[1] *Creditors Protective Ass'n. v. Balcom,* 248 Or 38, 432 P2d 319 (1967), was a creditors' bill suit against a third person who, although not a judgment debtor of the plaintiff, hindered collection of the judgment. I quote from the opinion:

"* * * Here the holder of the debtors' property, Shirley Roberts, in concert with the debtors, wrongfully paid over, or allowed to be paid over, amounts due to debtor in order to prevent the plaintiff from reaching the property. We hold that one who actively participates with the debtor in a fraudulent scheme to hinder the creditor's enforcement of his judgment, and, pursuant to that scheme, withholds amounts due on garnishment, is personally liable for the amount that garnishment would have realized. * * *" 248 Or at 45.

[2] The plaintiff cross-appealed from the trial court's denial of relief against Scafidi.