Argued and submitted December 21, 1994, affirmed April 26, petition for review denied September 26, 1995 (322 Or 167)

Daniel WONG,
Mark and Marie Li
and Patrick Heade,
*Appellants,*

*and*

Daniel and Lorraine LUM,
*Plaintiffs,*

*v.*

Henry Y.H. WONG,
Westborough Associates, L.P.,
a California limited partnership,
and Westborough Partners, Inc.,
a California corporation,
*Respondents,*

*and*

AG CV PARTNERS, INC.,
a California corporation,
Ag CV Associates, L.P.,
a California limited partnership,
and Cynthia S.N. Wong,
*Defendants.*

(9206-04082; CA A82046)

894 P2d 519

John P. Crowell argued the cause and filed the briefs for appellants.

Michael G. Hanlon argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiffs[1] appeal from a judgment notwithstanding the verdict (JNOV), which the trial court entered after concluding that it did not have personal jurisdiction over defendants. We affirm.

Plaintiffs, who are not residents of Oregon, invested money in a limited partnership, Ag CV Associates, L.P. (ACA), which was formed to develop housing in California. Defendant Henry Wong (Wong) was a limited partner in ACA and the sole shareholder of its corporate general partner, Ag CV Partners, Inc. (ACP). On July 7, 1989, ACP sent a letter from Portland to ACA partners, some of whom were Oregon residents, asking them to confirm their prior verbal consent to participate in the development of additional California housing through a different limited partnership. On July 14, 1989, Westborough Associates, L.P. (Westborough) was formed in California as a vehicle for that development. In order to become limited partners in Westborough, plaintiffs were required to execute a "private placement memorandum," which contained a detailed subscription offer and limited partnership agreement. The private placement memorandum was drafted in and sent from California. Wong became a limited partner in Westborough and was the sole shareholder of its corporate general partner, Westborough Partners, Inc.

After Westborough suffered financial difficulties, plaintiffs brought this action alleging violations of Oregon securities laws, common law fraud, breach of fiduciary duty, conversion and accounting. Plaintiffs asserted those claims against the limited partnerships and their respective corporate general partners, Wong and his wife, Cynthia Wong. No defendants are Oregon residents. Before trial, plaintiffs voluntarily dismissed their claims against ACA and ACP and their claim for conversion. Cynthia Wong was dismissed from this action on summary judgment, which plaintiffs do not

---

[1] Plaintiffs Daniel and Lorraine Lum voluntarily dismissed their claims before trial and are not parties to this appeal. When we refer to plaintiffs, we mean Mark and Maria Li, Patrick Heade and Daniel Wong, who is not related to defendant Henry Wong.

appeal.[2] The claim on appeal is for breach of fiduciary duty by Westborough and Wong.

After trial, the jury found for defendants on the securities and fraud claims. However, it returned a verdict for plaintiffs on the breach of fiduciary duty claim, and the trial court held that plaintiffs were entitled to an accounting. Defendants moved for a JNOV. The court granted the motion, concluding that it did not have jurisdiction to hear the breach of fiduciary duty and accounting claims.[3] Plaintiffs appeal from the resulting judgment, assigning error to the granting of the JNOV.

▇ Plaintiffs first argue that defendants waived jurisdiction by failing to bring a mandamus action after the trial court first determined that it had personal jurisdiction over them.[4] We disagree. It is well settled that, if a trial court concludes that it has personal jurisdiction over a defendant, that ruling may be challenged in a petition for mandamus *or* in an appeal. *See, e.g., North Pacific v. Guarisco*, 293 Or 341, 647 P2d 920 (1982). Because it is dispositive, the only remaining issue we discuss is plaintiffs' argument that defendants are subject to jurisdiction under the "catchall" provision of ORCP 4 L, which extends personal jurisdiction to the limits of due process under the Fourteenth Amendment to the United States Constitution. *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 156, 854 P2d 461 (1993). The burden is on plaintiffs to establish facts sufficient to support the exercise of jurisdiction over these out-of-state defendants. *State ex rel Michelin v. Wells*, 294 Or 296, 299, 657 P2d 207 (1982).

▇▇ In determining if the exercise of jurisdiction over an out-of-state defendant comports with due process, the first inquiry is whether the defendant has "minimum contacts" with the forum state. Minimum contacts will be found where the defendant has "purposefully directed" its activities at residents of the forum state and where the litigation "arises

---

[2] Accordingly, when we refer to defendants, we mean only Wong, Westborough and Westborough Partners, Inc.

[3] The court also entered a judgment of dismissal on the accounting claim.

[4] Defendants asserted lack of personal jurisdiction as an affirmative defense. Later, they moved for summary judgment on that issue. The trial court denied the motion.

out of or relates to" those activities. Next, if minimum contacts exist, the exercise of jurisdiction must be reasonable. *Burger King Corp. v. Rudzewicz*, 471 US 462, 472, 105 S Ct 2174, 85 L Ed 2d 528 (1985); *State ex rel Circus Circus Reno, Inc.*, 317 Or at 159-60.

We apply those principles to the facts in this case. In their amended complaint, plaintiffs alleged that defendants breached a fiduciary duty owed to them by: (1) concealing Westborough's financial condition; (2) concealing that the cost of completing the Westborough project was greater than represented; (3) failing to disclose cost overruns that delayed that project; and (4) distributing a general contractor's fee for the Westborough project that exceeded the amount specified in the private placement memorandum. Plaintiffs argue that three events occurred in Oregon that are sufficient to constitute minimum contacts relevant to their claim for breach of fiduciary duty: (1) shares in ACA were registered and offered for sale in Oregon as securities; (2) ACP mailed on July 7, 1989, a letter seeking the consent of ACA limited partners to invest in a different, unformed partnership; and (3) Wong signed, in Portland, a document that purported to clarify language in the private placement memorandum about the general contractor's fee. Defendants argue that none of those contacts concern plaintiffs' breach of fiduciary duty allegations. We discuss each contact, in turn.

Plaintiffs contend that ACP owed them a fiduciary duty, because it was the general partner of ACA, in which they had made an investment. They assert that Wong also owed them a fiduciary duty as controlling shareholder of ACP. That duty, they argue, arose out of the offer and sale from Oregon of shares in ACA. From that premise, they argue that Wong's duty "expanded" when they transferred a part of their investment in ACA to Westborough. However, the evidence is that plaintiffs did not transfer any of their investment from ACA to Westborough.[5] Although plaintiffs may have sold shares in ACA and used the money to invest in Westborough, when they did that, they were not in Oregon and the funds were not transmitted to Oregon. Thus, the offer and sale from Oregon of *ACA* shares is not a contact

---

[5] To become partners in Westborough, they were required to submit the full purchase price of their subscriptions.

relevant to this action, because plaintiffs' claim is based on a breach of fiduciary duty owed to plaintiffs arising out of the *Westborough* project. Thus, plaintiffs' claim is not related to their investment in ACA.

■        Plaintiffs' argument about the July 7, 1989, letter is similarly unavailing. *ACP* mailed plaintiffs and other partners that letter, which sought their consent to participate in a proposed partnership. Plaintiffs alleged that Westborough and Westborough Partners, Inc., breached a fiduciary duty owed to them. Because those entities did not exist on July 7, 1989,[6] it follows that ACP's letter is not a contact relevant to a breach of fiduciary duty allegedly committed by Westborough and Westborough Partners, Inc.

■        Plaintiffs also alleged that Wong breached his fiduciary duty to them as "a director, officer and controlling shareholder of Westborough Partners, Inc." Wong signed the July 7, 1989, letter in his capacity as president of ACP. Plaintiffs do not point to any evidence that shows that Wong was the "alter ego" of Westborough Partners, Inc., or ACP. *See Amfac Foods v. Int'l Systems*, 294 Or 94, 654 P2d 1092 (1982). Accordingly, Wong's signing of the July 7, 1989, letter is not an act by him individually. Therefore, even assuming that ACP's July 7, 1989, letter was purposefully directed at ACP investors, some of whom were Oregon residents, plaintiffs have not alleged and proved that Wong or the other defendants were parties to that activity. In other words, that letter was not purposefully directed at Oregon residents by *these defendants*. *Burger King Corp.*, 471 US at 476. Plaintiffs' remaining arguments about the July 7, 1989, letter do not merit discussion.

■        The final contact on which plaintiffs rely involves a letter that Wong signed in Portland on July 31, 1989. Wong and Go,[7] who is an Oregon resident, met in San Francisco, California, on July 16, 1989, to discuss the Westborough project. At that meeting, they reached an agreement about

---

[6] Westborough Partners, Inc., was formed on July 14, 1989. Westborough came into existence on July 27, 1989.

[7] Go headed a group of investors that were limited partners in ACA and Westborough. Neither Go nor those investors are parties to this action.

the general contractor's fee for the project,[8] including an understanding that the general contractor would defer part of the fee. That agreement was made part of the private placement memorandum. On July 30, 1989, Go drafted a letter to Wong, in which he said that the private placement memorandum had provisions that were either vague or inconsistent with their agreement. Go asked Wong to sign the letter as confirmation of his understanding of the agreement that they had reached in San Francisco. Wong happened to be in Portland and, on July 31, 1989, signed[9] the letter at Go's Portland office. Go sent copies of that letter to other members of his investment group, who were residents of Hawaii and California. There is no evidence that plaintiffs received copies.

Plaintiffs argue that the agreement about the general contractor's fee was "negotiated and entered into in Oregon," and that this action arises, in part, out of the breach of that agreement. It is true that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanction in the other State for the consequences of their activities." *Burger King Corp.*, 471 US at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 US 643, 647, 70 S Ct 927, 94 L Ed 1154 (1950)). Here, however, Go testified that the agreement about the general contractor's fee was reached in California. Plaintiffs do not explain how Wong's signing of a letter *confirming* that agreement created a new obligation to *any* Oregon resident, or how it constitutes a contact sufficient to justify the exercise of personal jurisdiction over defendants. Moreover, plaintiffs alleged that defendants breached a fiduciary duty by distributing a general contractor's fee that exceeded the amount specified *in the private placement memorandum*; there are no allegations that refer to the letter that Wong signed in Portland.[10]

---

[8] The general contractor for that development was Inter-Pacific Development, Inc. Wong was president and controlling shareholder of that corporation.

[9] Wong signed the letter in his capacity as the president of Westborough Partners, Inc., and president of the corporate general contractor.

[10] The private placement memorandum required that the general contractor's fee would be deferred until the partners received a $1 million return on their investment and an additional return on their investment. Go's letter sought Wong's confirmation of an agreement they had reached about an additional term related to the deferral of the general contractor's fee. That term is not the subject of plaintiffs' allegations.

On those facts, we conclude that Wong's signing, in Oregon, of a letter drafted by Go confirming details of an agreement previously reached in California was not such a meaningful contact that defendants could reasonably anticipate being required to defend an action in this state. *See World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297, 100 S Ct 559, 62 L Ed 2d 490 (1980); *Hanson v. Denckla*, 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958).

Because of our disposition of plaintiffs' assignments about personal jurisdiction, we do not reach their remaining assignment of error.

Affirmed.