WALTERS, J.,
dissenting.
Because the law requires Judge Guimond to decide whether Haugen is mentally competent to be executed and because Judge Guimond has not yet considered expert testimony relevant to that issue, this court should not conclude that Judge Guimond “has complied” with this court’s alternative writ of mandamus. That writ permitted counsel to present a challenge to Haugen’s mental competence and evidence of Haugen’s incompetence. Until Judge Guimond hears and considers that challenge and evidence, no death warrant should issue.
Before the death warrant hearing that Judge Guimond conducted on May 18, 2011, Haugen’s lawyers, Simrin and Goody, filed a motion pursuant to ORS 137.463(4)(a), asking Judge Guimond to find that Haugen was not mentally competent to be executed or to set a hearing to consider evidence on that issue. Simrin and Goody explained that a neuropsychologist, Dr. Muriel Lezak, had conducted a neuropsychological assessment of Haugen’s mental capacity and had informed them that she was prepared to testify to her opinion that Haugen was not mentally competent to be executed.[1] Judge Guimond declined to entertain Simrin’s and Goody’s motion or the evidence that they *345 proffered. Instead, after discharging Simrin and Goody at Haugen’s request, Judge Guimond permitted Haugen to withdraw the motion. Judge Guimond then conducted a colloquy with Haugen and issued a death warrant.
This court issued its alternative writ of mandamus on June 29, 2011. This court explicitly ordered Judge Guimond to conduct a new “evidentiary hearing” and, at that hearing, to permit “Simrin and Goody” to “offer evidence pertinent to * * * the question of whether defendant Haugen is competent for the purposes of being executed.” (Emphases added.) The terms and context of that order required Judge Guimond to conduct the evidentiary hearing that Simrin and Goody had sought and to hear the evidence that they had proffered. This court’s direction to Judge Guimond was not limited to ensuring that Haugen was represented by competent counsel or was mentally competent to waive his right to counsel. This court ordered Judge Guimond to reinstate Simrin and Goody — lawyers who intended to challenge Haugen’s competence to be executed — and to permit them to present evidence pertaining to that challenge — the testimony of Lezak.
This court anticipated that, at the evidentiary hearing that it ordered, the state and Haugen would take the position that Haugen is mentally competent to be executed. This court anticipated that Simrin and Goody would take the contrary position that Haugen is not mentally competent to be executed and to offer Lezak’s testimony to prove that fact. This court adhered to the view that “truth * * * is best discovered by powerful statements on both sides of the question[,]” United States v. Cronic, 466 US 648, 655, 104 S Ct 2039, 80 L Ed 2d 657 (1984) (internal citations omitted), and issued its writ to ensure that the issue of Haugen’s mental competence to be executed would be tested, as our system tests all questions of fact, by subjecting it to the crucible of the adversary process.
This court now knows that Simrin and Goody no . longer represent Haugen and that no lawyer has filled the role that it anticipated that Simrin and Goody would fill. No lawyer has challenged Haugen’s mental competence to be *346 executed or presented Lezak’s opinion that he is incompetent. Because Judge Guimond has not heard or considered that challenge or that evidence, this court cannot conclude that Judge Guimond “has complied” with this court’s order.
When this court entered its order dismissing the alternative writ of mandamus, it acted prematurely. ORS 34.250(6) provides that if the judge or court whose action is being challenged by a petition for a writ of mandamus “performs the act * * * required by the alternative writ,” the relator shall notify, and the judge, court, or any party may notify, the Supreme Court that the judge or court “has complied.” (Emphases added.) In this case, after this court entered its writ, Judge Guimond notified this court that he “would comply,” and this court dismissed its writ on that basis. In fact, however, neither the relator, the judge, nor any party has notified us that Judge Guimond “has complied” with this court’s order as ORS 34.250(6) requires. At the time that the court entered its order of dismissal, Judge Guimond had not held an evidentiary hearing as to Haugen’s mental competence to be executed, and this court did not know what evidence he would consider on that issue. This court should recall its order of dismissal and enter further orders enforcing and, if necessary, clarifying its writ.
This court should order Judge Guimond to vacate the findings and conclusions that he entered on October 7, 2011, stay Haugen’s execution, and hold an evidentiary hearing on the issue of Haugen’s mental competence to be executed. This court should order Judge Guimond to grant Simrin and Goody the status necessary to permit them to challenge Haugen’s mental competence, or appoint alternate counsel to serve in that role. See Wright v. Thompson, 324 Or 153, 157, 922 P2d 1224 (1996) (assuming, arguendo, that Oregon law may provide third-party standing to seek relief for an incompetent convicted defendant); Ford v. Haley, 179 F3d 1342 (11th Cir 1999) (capital defendant’s former lawyer retained standing to file appeal challenging district court’s finding that capital defendant is mentally competent to discharge former counsel and its dismissal of habeas action); Mason by and through Marson v. Vasquez, 5 F3d 1220, 1223 *347 (9th Cir 1993) (for purpose of competency hearing, court permitted participation of lawyer that defendant had discharged); and Lenhard v. Wolff, 603 F2d 91, 92-93 (9th Cir 1979) (per curiam) (dismissing writ of habeas corpus filed by capital defendant’s former lawyers for lack of standing, but suggesting that result would have been different if there had been evidence that defendant was incompetent). This court should require Simrin and Goody, or alternate counsel, to present relevant evidence of Haugen’s incompetence, including Lezak’s assessment, opinion, and testimony. Finally, this court should grant Judge Guimond the alternative of contesting this court’s order and proceeding with briefing and oral argument.
Clearly, those are actions that this court has the jurisdiction and authority to order. Article VII (Amended), section 2, of the Oregon Constitution expressly confers on this court authority to, “in its own discretion, take original jurisdiction in mandamus * * * proceedings.” If this court chooses to exercise that discretion (as it did in this case when it originally issued its June 29 order allowing the requested alternative writ of mandamus), it has at its disposal “all the means to carry [that jurisdiction] into effect[,]” ORS 1.160,[2] including, particularly, the authority to recall its own erroneous dismissal of a writ so that it may enforce or clarify that writ or determine whether the acts required have been performed.[3]
*348 In this case, Judge Guimond’s failure to hear and consider Lezak’s opinion that Haugen is incompetent to be executed presents serious constitutional implications. The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits a state from carrying out a sentence of death when a prisoner is not competent to be executed. Panetti v. Quarterman, 551 US 930, 127 S Ct 2842, 168 L Ed 2d 662 (2007); Ford v. Wainwright, 477 US 399, 106 S Ct 2595, 91 L Ed 2d 335 (1986). If a prisoner makes “ ‘a substantial threshold showing of insanity,’ the protection afforded by procedural due process includes a ‘fair hearing’ in accord with fundamental fairness ."Panetti, 551 US at 949 (quoting Eoni, 477 US at 426 (Powell, J., concurring)). Such a hearing must include the opportunity to submit “ ‘evidence and argument from the prisoner’s counsel, including expert psychiatric evidence that may differ from the State’s own psychiatric examination.’ ” Id. at 950 (quoting Ford, 477 US at 427 (Powell, J., concurring)). To ensure that Oregon acts consistently with those constitutional mandates, Oregon law requires that a trial judge conduct a death warrant hearing in every case in which a defendant is sentenced to death, make an “appropriate inquiry” as to the defendant’s mental capacity, and make findings on the record on that issue. ORS 137.463(2), (4)(a).
When this court reviewed the letter from Simrin and Goody that it construed as a petition for a writ of mandamus, it was not convinced that the death warrant hearing that Judge Guimond had conducted on May 18, 2011, satisfied those constitutional and statutory requirements. This court knew that a man’s life hung in the balance, and it was not willing to tolerate the risk that, because Judge Guimond had failed to conduct an evidentiary hearing on the issue of *349 Haugen’s mental competence and to consider the expert evidence of Haugen’s mental incompetence that his lawyers had proffered, Judge Guimond had wrongly issued a death warrant. See Beck v. Alabama, 447 US 625, 637-38, 100 S Ct 2382, 65 L Ed 2d 392 (1980) (Supreme Court decided that it could not tolerate a risk created by the lack of a different procedural safeguard — the opportunity for a jury to consider convicting the defendant of a lesser-included offense).
Death is different in kind from all other sentences and requires heightened judicial scrutiny:
“[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.”
Woodson v. North Carolina, 428 US 280, 305, 96 S Ct 2978, 49 L Ed 2d 944 (1976). See also Lockett v. Ohio, 438 US 586, 605, 98 S Ct 2954, 57 L Ed 2d 973 (1978) (when choice is between life and death, risk of improper sentence is “unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments”). “Oregon law also has long imposed stricter safeguards on potential capital cases than on other criminal proceedings.” State v. Wagner, 305 Or 115, 189, 752 P2d 1136 (1988) (Linde, J., dissenting), vac’d and rem’d sub nom Wagner v. Oregon, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989).
The majority agrees that death is, indeed, different, see State v. Haugen, 349 Or 174, 203, 243 P3d 31 (2010) (“To state the obvious, the penalty of death is different in kind from incarceration”), and apparently assessed OCRC’s request that we enforce our writ of mandamus in that light. However, in declining to take action in response to the information that OCRC provided, the majority does not meet this court’s obligation to see that Judge Guimond follows the constitutional and statutory procedures necessary to ensure the reliability of his decision.
The majority concludes that Judge Guimond “has complied” with this court’s order because it does not interpret *350 the writ to require Judge Guimond to consider Lezak’s opinion. In the majority’s view, it is enough, under the express terms of the writ, that Haugen had counsel — Scholl—and that Scholl chose not to present Lezak’s opinion. The problem with that view is that Scholl’s representation does not meet the terms or the purpose of the writ. The terms and purpose of the writ require that Judge Guimond hear from lawyers who take a position contrary to Haugen’s and consider expert evidence that Haugen is mentally incompetent to be executed. In the affidavit that Scholl filed with this court, Scholl acknowledges that he did not advocate for that position or present that evidence. Scholl explains his belief that he is ethically required to abide by Haugen’s decisions and to advance Haugen’s personal position as Haugen directs.
The stark problem that this court faces is that two sets of lawyers have reached two contrary conclusions as to Haugen’s mental competence to be executed. If Haugen is mentally competent, then he is entitled to determine his legal strategy and ask to be executed. Scholl represents that position. If Haugen is not mentally competent, the court must appoint lawyers to represent his best interests and advance legal positions in accordance with those interests. Simrin and Goody represent that position.[4] No neutral judge has decided which of those two sets of lawyers is correct. To this date, Judge Guimond has not conducted an evidentiary hearing at which one side contends that Haugen is competent, and the other side takes the contrary position, and presents Lezak’s testimony and other evidence in support of that position, as Simrin and Goody were prepared to do. Haugen may be correct that he is mentally competent to be executed, and he certainly is entitled to the assistance of counsel in pressing that point. However, Oregon law requires a neutral judge, and not Haugen or lawyers acting at his direction, to decide that *351 question of fact. ORS 137.463(4)(a). And a neutral judge cannot make that decision until the judge conducts a “fair hearing” in accordance with the Constitution of the United States and makes an “appropriate inquiry” as required by Oregon law, considering not only the evidence that Haugen, or lawyers acting at his direction, wish to offer, but also the evidence of Haugen’s incompetence. See Panetti, 551 US at 949 (requiring “fair hearing”); ORS 137.463(4)(a) (requiring “appropriate inquiry”).
The majority decides otherwise and finds significance in this court’s denial of Simrin and Goody’s petition for a writ of mandamus, in which they objected to the substitution of Scholl as counsel for Haugen. At the time that this court denied that petition, however, this court did not know that Scholl would not proceed as Simrin and Goody had and would not challenge Haugen’s mental competence or offer relevant evidence of Haugen’s incompetence, including Lezak’s testimony. Had Scholl done so, there would have been no question that the terms and purpose of the writ had been met. And, in any event, denial of a petition for writ of mandamus does not constitute a ruling on the merits of the issues raised. See North Pacific v. Guarisco, 293 Or 341, 346 n 3, 647 P2d 920 (1982) (because mandamus is extraordinary and discretionary remedy, denial of petition is not binding on determination of issue); State ex rel Venn v. Reid, 207 Or 617, 633, 298 P2d 990 (1956) (nothing said in denying writ “is res judicata as to the merits of the controversy”).
The majority also suggests that Scholl’s decision not to present Lezak’s opinion was manifestly correct and this court should defer to Scholl’s expertise. The majority notes that Scholl stated that he could have offered Lezak’s affidavit if he had thought that it would be useful, but that he had decided not to do so because the affidavit “did not seem thorough or complete,” and he “would not try to establish anyone’s incompetency in court or otherwise with the information in that document.” However, when OCRC filed Lezak’s affidavit in this court, it did not intend that that affidavit would substitute for Lezak’s testimony.[5] It is therefore not *352 surprising that Lezak’s affidavit summarized her conclusions and itself was not thorough or complete. If Simrin and Goody, or alternate counsel, had been permitted to offer Lezak’s opinion, they certainly would have offered more than Lezak’s affidavit.
In the affidavit that he filed with this court, Scholl does not aver that he had actually interviewed Lezak to learn the basis for her conclusions or that he had asked her for a more complete report. Nevertheless, Scholl decided that Haugen was mentally competent and that he must abide by Haugen’s directions. Whether Scholl was correct in that decision is not, however, the question before us. The question before us is, instead, whether Judge Guimond himself should hear, consider, and evaluate all of the relevant evidence.
It is true that Judge Guimond held an evidentiary hearing on September 27, 2011, and that Haugen had legal counsel at that hearing.[6] But at that September hearing, as at the May hearing, Judge Guimond again heard only the evidence that Haugen chose to present. That Haugen was represented by counsel in September does not change the fact that, on both occasions, Haugen controlled the evidence of his own competence that Judge Guimond heard and considered. It is wrong for this court to refuse to acknowledge that that circumstance resulted in a flawed procedure — one in which Judge Guimond failed to consider relevant expert evidence of Haugen’s incompetence. And it is wrong for this court to refuse to correct that error.
I firmly believe that the writ that this court issued required Judge Guimond to permit Simrin and Goody, or if necessary, other alternate lawyers, to present a challenge to *353 Haugen’s mental competence to be executed and the opinion of Lezak that Haugen is incompetent. If, however, because this court failed to anticipate Simrin and Goody’s discharge as counsel for Haugen, the writ was not sufficiently clear, then this court should accept responsibility and issue a more specific order now. But either way, this court should act.[7]
In a death warrant proceeding, it is the trial judge who decides whether, as a matter of fact, a defendant who is sentenced to death is mentally competent to be executed. ORS 137.463(4)(a). This court must ensure that the procedure that the trial judge uses to make that factual decision accords with constitutional and statutory mandates. If the required procedure is followed, then, like the rest of society, this court trusts that whatever factual decision the trial judge makes will be the correct one. The correct procedure helps ensure the reliability of the result. In a death warrant hearing, the result affects not only the defendant, who has committed unthinkable crimes warranting a death sentence, but also the people of this state who impose that penalty. For society, what is at stake is “ ‘our collective right as a civilized people not to have cruel and unusual punishment inflicted in our name.’ ” Whitmore v. Arkansas, 495 US 149, 172, 110 S Ct 1717, 109 L Ed 2d 135 (1990) (Marshall, J., dissenting) (quoting Franz v. Lockhart, 700 F Supp 1005, 1024 (ED Ark 1988)). The majority errs in concluding that the procedure that has been followed in this case is sufficient to that end.
Every day I trust that truth will be the victor if the facts are subjected to a fair adversary process. When I am assured that a fair process has been followed, I trust the decision of the judge or jury to such an extent that I can join my colleagues in affirming the sentence that results — even a death sentence that will be carried out, at least in part, in my name. But here, I have no such assurance, and I can neither trust nor join.
I can only, respectfully, dissent.
De Muniz, C. J., and Durham, J., join in this dissenting opinion.

 With their motion, Simrin and Goody filed a declaration summarizing the conclusion that Lezak had reached and to which they expected Lezak would testify. OCRC later attached a sworn affidavit from Lezak to the petition for writ of mandamus that it filed with this court. In that affidavit, Lezak states that Haugen suffers from a delusional disorder that “prevents him from comprehending the reasons for his death sentence or its implication!!,]” rendering him incompetent to be executed under Panetti v. Quarterman, 551 US 930, 127 S Ct2842, 168 L Ed 2d 662 (2007), Ford v. Wainwright, 477 US 399, 106 S Ct 2595,91 L Ed 2d 335 (1986), and ORS 137.463(6)(a).

 ORS 1.160 provides:
“When jurisdiction is, by the Constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes.”

 The authority of this court and, indeed, of any court of record in this state, to act to recall its previous orders cannot be denied. See, e.g., Bailey v. Steele, 263 Or 399, 401, 502 P2d 586 (1972) (“the authority of a court to vacate or set aside its own judgments is an inherent power of all courts of record or of general jurisdiction and may be exercised without any special statutory authority). This court has exercised that power previously, in the context of orders disposing of petitions for review. See, e.g., State v. Saner, 342 Or 254, 149 P3d 1213 (2006) (on own motion, vacating order denying review); Zimmerlee v. Baldwin, 330 Or 281, 6 P3d 1100 (2000) (vacating on own motion denial of petition for review 14 months later); Ponder v. Baldwin, 330 Or 281, 6 P3d 1100 (2000) (on own motion, granting reconsideration and withdrawing order denying review); Cooper v. Maass, 329 Or 10, *348 994 P2d 119 (1999) (on own motion, reconsidering petition for review previously denied and withdrawing order denying review). Although, as indicated, the power to correct may be exercised without any special statutory authority, there also are statutes that explicitly address that authority. See, e.g., ORCP 71 A, C (providing that certain errors may be corrected by trial court at any time on its own motion and that “[t]his rule does not limit the inherent power of a court to modify a judgment within a reasonable time”); ORS 19.270(6)(a) (appellate court, which normally loses jurisdiction over cause when appellate judgment issues, retains jurisdiction to “[r]ecall the appellate judgment as justice may require”).

 That fact that Simrin and Goody questioned Haugen’s mental competence is an important factor in assessing Haugen’s contentions that Simrin and Goody had a conflict of interest and should not have had him examined by Lezak or disclosed her opinion to the court. The ethical rules anticipate that a lawyer may need to take action against a client’s personal wishes when the client suffers from diminished capacity. See Oregon Rules of Professional Conduct (RPC) 1.14(b) (lawyer may take necessary action to protect client with diminished capacity even if action against client’s wishes).

 As Simrin and Goody explained to this court in the letter that we construed as a petition for a writ of mandamus, the death warrant hearing that was held on *352 May 18,2011, was originally scheduled for May 13, 2011. Before that date, Simrin and Goody had been operating under the assumption that the hearing would be continued to give Lezak time to write a complete report and testify in person. However, on May 13, Judge Guimond agreed with the state that the applicable statute required the hearing to be conducted within 30 days of the issuance of the appellate judgment and, therefore, declined to continue it. Because Lezak was then out of the country, Simrin and Goody filed their own declaration summarizing Lezak’s opinion. Later, as noted, Lezak also signed a sworn affidavit summarizing her conclusions, which OCRC attached to the petition for writ of mandamus that it filed with this court.

 That hearing was continued on October 7, at which time Judge Guimond entered findings of fact and conclusions of law.

 We also should not consider ourselves bound by the arguments of OCRC. We can determine the procedure that the constitution and statutes require and mandate that it be followed.